## EX PARTE Cristian AGUILAR, Applicant

### NO. WR-82,014-01

Court of Criminal Appeals of Texas.

Delivered: September 20, 2017

Stanley G. Schneider, Schneider & McKinney, P.C., 440 Louisiana, Suite 800, Houston, Texas 77002, for Applicant.

Andrew J. Smith, Assistant District Attorney, Harris County, Texas, 1201 Franklin, Suite 600, Houston, Texas 77002, Stacey Soule, State's Attorney, Austin, TX, for the State.

## OPINION

Keasler, J., delivered the opinion of the Court, in which Hervey, Alcala, Richardson, Newell, and Walker, JJ., joined.

Cristian Aguilar, a Honduran national with temporary protected status, pleaded guilty to the state-jail felony of attempting to evade arrest in a motor vehicle and was sentenced to six months' imprisonment. In his application for a writ of habeas corpus, Aguilar alleged that his plea counsel, who gave incorrect advice regarding the immigration consequences of the guilty plea, was ineffective and his plea was involuntary. We hold that Aguilar's plea was involuntary, and we vacate his plea.

### I.

At the time of his arrest, Aguilar was lawfully present in the United States as a nonimmigrant with temporary protected status and was attempting to adjust his status and gain lawful permanent residency. Because he was concerned that the criminal proceedings would affect his immigration status, Aguilar asked his immigration attorney to advise his plea counsel.

The immigration attorney spoke with plea counsel three times. She told plea counsel that if Aguilar was convicted of a felony he would lose his temporary protected status and have no legal immigration status. She also told plea counsel that Aguilar would be ineligible for lawful permanent residency if he was sentenced to more than six months' imprisonment. Plea counsel indicated to both the immigration attorney and Aguilar that he understood and could negotiate a plea bargain that allowed Aguilar to retain his temporary protected status and remain eligible for legal permanent residency.

Plea counsel negotiated a plea agreement where Aguilar would plead guilty to attempted evading arrest with a motor vehicle, a state-jail felony, and be sentenced to six months in state jail. On plea counsel's advice, Aguilar accepted the plea agreement and pleaded guilty. The plea did not conform with the immigration attorney's advice and rendered Aguilar ineligible to maintain his temporary protected status. In his affidavit, Aguilar alleges that: "[He] would never have agreed and entered a guilty plea if [he] had known or thought that it would cause [him] a problem with immigration or put [him] in danger of deportation."

Aguilar's habeas corpus application alleged that ineffective assistance of counsel rendered his guilty plea involuntary. Specifically, he argued that plea counsel gave incorrect legal advice on the immigration consequences of the guilty plea. The habeas judge recommended that we grant relief and entered the following findings of fact: (1) Aguilar's primary concern was to avoid deportation consequences and not lose his right to remain in the United States; (2) plea counsel was informed by an immigration attorney that a felony conviction would cause Aguilar to lose his temporary protected status; (3) Aguilar relied on plea counsel's incorrect advice that pleading guilty to a state-jail felony would not affect his immigration status; and (4) Aguilar "would not have pled guilty but would have insisted on going to trial but for [plea counsel's] incorrect counsel."

We remanded the case to determine whether Aguilar pleaded guilty to a removable offense. After this remand, the habeas judge entered the following additional findings of fact: (1) Aguilar is required to reapply for his temporary protected status; (2) the United States Citizenship and Immigration Services (USCIS) notified Aguilar that it will deny his reapplication if he has been convicted of a felony; (3) the felony conviction Aguilar received as a re-

sult of his plea has affected his immigration status and will subject him to removal; (4) because of the plea, USCIS will terminate Aguilar's temporary protected status; (5) because of the plea, Aguilar "has no legal status[;]" and (6) "[i]n the context of [Aguilar's] legal status, the conviction in this case is a deportable offense." The habeas judge again recommended we grant Aguilar relief.

We remanded the case a second time to determine the impact of Aguilar's juvenile record on his immigration status. The habeas judge entered additional findings of fact and conclusions of law and again recommended we grant relief. We filed and set this case to determine whether *Padilla v. Kentucky*[1] extends to the facts presented here.

## II.

As the United States Supreme Court has said, "Immigration law can be complex, and it is a legal specialty of its own."[2] Although criminal and immigration law often interact, criminal law attorneys are not necessarily specialists in immigration law. In order to understand Aguilar's case, it is necessary to define the immigration terminology at play here. This section serves as a brief and by no means complete primer into the immigration law involved in this case.

Aguilar is a Honduran national with temporary protected status, a legal immigration status sometimes provided to nonimmigrants. A nonimmigrant is an alien who lives in the United States temporarily and for a limited purpose.[3] In contrast, a legal permanent resident is an alien who lawfully lives in the United States permanently and defines the United States as his permanent residence.[4]

When the conditions in a foreign country prevent nationals from safely returning, that country may be designated for temporary protected status.[5] Once a country is designated, nationals who are already in the United States may be granted temporary protected status.[6] Under temporary protected status, an alien is not removable and is authorized to work in the United States.[7] To gain temporary protected status, an alien must be a national of a designated country, have been continuously present in the United States since the designation, be admissible, not have been convicted of a felony, and register within the registration period.[8] Once an alien has gained temporary protected status, he is required to re-register every year.[9] If the Attorney General finds that an alien is no longer eligible for temporary protected status, he will withdraw the status and its accompanying protections.[10]

1. 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010).

2. *Id.* at 369, 130 S.Ct. 1473.

3. *Nonimmigrant*, U.S. CITIZENSHIP AND IMMIGRATION SERVICES (last visited June 6, 2017), https://www.uscis.gov/tools/glossary/nonimmigrant.

4. 8 U.S.C. § 1101(a)(20); *see Permanent Resident Alien*, U.S. CITIZENSHIP AND IMMIGRATION SERVICES (last visited June 6, 2017), https://www.uscis.gov/tools/glossary/permanent-resident-alien.

5. 8 U.S.C. § 1254a(b)(1); *see Temporary Protected Status*, U.S. CITIZENSHIP AND IMMIGRATION SERVICES (last visited June 6, 2017), https://www.uscis.gov/tools/glossary/temporary-protected-status.

6. 8 U.S.C. § 1254a(c)(1)(A).

7. *Id.* § 1254a(a)(1).

8. *Id.* § 1254a(c).

9. *Id.* § 1254a(c)(3)(C).

10. *Id.* § 1254a(c)(3)(A).

### III.

A defendant is entitled to post-conviction relief on an ineffective-assistance-of-counsel claim if he demonstrates that (1) counsel's performance was deficient and (2) the applicant was prejudiced as a result of that deficient performance.[11] Counsel's performance is deficient if it falls "below an objective standard of reasonableness."[12]

In *Padilla*, the United States Supreme Court held that when the removal consequences of a guilty plea are clear, counsel has a duty to correctly advise a defendant of those consequences.[13] Padilla, a Honduran national and lawful permanent resident, was charged with the transportation of a large amount of marihuana.[14] The Supreme Court of Kentucky rejected Padilla's claim because it considered removal a collateral matter and outside of the scope of representation required by the Sixth Amendment.[15] The Supreme Court of the United States held that advice on the unique consequence of removal was within the scope of representation required by the Sixth Amendment.[16] Although removal is a civil proceeding, it is intimately related to criminal proceedings and current immigration law renders removal the presumptive consequence of certain convictions.[17] The court held that "[t]he severity of deportation—'the equivalent of banishment or exile,'—only underscores how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation."[18]

The immediate consequence of Aguilar's conviction is not removal, but a loss of his legal nonimmigrant status. Aguilar is present in the United States as a nonimmigrant with temporary protected status. Because aliens with temporary protected status are required to reapply for their status annually, they must continue to remain eligible to keep their temporary protected status.[19] An alien is ineligible for temporary protected status if he is convicted of a felony.[20] Once an alien becomes ineligible and loses temporary protected status, he loses his legal nonimmigrant status.[21] While the conviction directly causes a loss of status and not removal, under the removal statute, "any alien who was admitted as a nonimmigrant and who has failed to maintain the nonimmigrant status in which the alien was admitted . . . is deportable."[22] As such, Aguilar's conviction places him on the unstoppable path toward presumptive removal.

When an alien loses his nonimmigrant status, like when an alien is convicted of a controlled substance offense, "his removal is practically inevitable but for the possible exercise of limited remnants of equitable discretion vested in the Attorney General

---

11. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Ex parte Torres*, 483 S.W.3d 35, 43 (Tex. Crim. App. 2016).

12. *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052.

13. *Padilla*, 559 U.S. at 369, 130 S.Ct. 1473.

14. *Id.* at 359, 130 S.Ct. 1473.

15. *Id.* at 364-65, 130 S.Ct. 1473.

16. *Id.* at 365, 130 S.Ct. 1473.

17. *Id.*

18. *Id.* at 373-74, 130 S.Ct. 1473 (in text citation omitted).

19. 8 U.S.C. § 1254a(c).

20. *Id.* §§ 1254a(c)(2)(B)(I), (3)(A).

21. *Id.*

22. *Id.* § 1227(a)(1)(C)(i).

to cancel removal."[23] Similarly, when a nonimmigrant with temporary protected status is convicted of a felony the loss of his nonimmigrant status is practically inevitable. Under the temporary protected status statute: "The Attorney General shall withdraw temporary protected status granted to an alien under this section if the Attorney General finds that the alien was not in fact eligible for such status under this section."[24] The language in this statute is mandatory. Any discretionary relief would be unlikely and, like his removal after he loses status, Aguilar's loss of temporary protected status is practically inevitable.

■ The State argues that *Padilla* should not extend beyond the unique consequences of removal. According to the State, because the immediate consequence of Aguilar's conviction was a loss of status and not removal, *Padilla* does not apply. But the State fails to appreciate that Aguilar's loss of temporary protected status and presumptive removal necessarily follow the conviction. A felony conviction renders a nonimmigrant with temporary protected status ineligible to maintain that status and the loss of nonimmigrant status renders an alien removable.[25] While presumptive removal is not the immediate consequence of the conviction, it is an automatic and practically inevitable response to the conviction; a response which Aguilar cannot avoid. Because the loss of status automatically renders Aguilar removable, the conviction has removal consequences and *Padilla* is triggered. We do not decide whether every loss or change in status

implicates *Padilla*, but when a conviction automatically triggers a loss of status which, in turn, renders a defendant presumptively removable, *Padilla* applies.

## IV.

■ Although the United States Supreme Court recognized that counsel must inform a client when removal may be a consequence of a conviction, the scope of counsel's duty to advise his client is determined by whether the removal consequence is clear, specific, and explicit.[26] Padilla's counsel assured him that a guilty plea and subsequent conviction would not subject him to removal.[27] However, the removal statute clearly, succinctly, and explicitly defined removal as a consequence of Padilla's conviction.[28] "The consequences of Padilla's plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect."[29] Because the removal statute was clear, succinct, and explicit, the court held that Padilla's counsel was constitutionally deficient for providing incorrect advice regarding the immigration consequences of the guilty plea.[30]

■ In *Padilla*, the United States Supreme Court focused on the clarity of the removal statute, but when plea counsel has the advantage of an immigration attorney we need not focus on the statute alone. Criminal law attorneys are generally not knowledgeable of specialized immigration law and may not understand the effect of a criminal conviction on a noncitizen. As such, we anticipate and expect, but do not

23. *Padilla*, 559 U.S. at 364, 130 S.Ct. 1473.

24. 8 U.S.C. § 1254a(c)(3)(A).

25. *Id.* §§ 1227(a)(1)(C)(I), 1254a(c)(3).

26. *Padilla*, 559 U.S. at 369, 130 S.Ct. 1473.

27. *Id.* at 368, 130 S.Ct. 1473.

28. *Id.*

29. *Id.* at 369, 130 S.Ct. 1473.

30. *Id.*

demand, that criminal law attorneys will rely on their immigration-law counterparts when representing noncitizens. When a criminal defense attorney is advised by an immigration attorney and correctly relies on that advice, the advice and immigration-law knowledge is imputed to the criminal defense attorney and his performance is evaluated in light of that expertise. In such a case, if the advice is clear, explicit, and succinct, then plea counsel has a duty to provide correct advice.

■ We need not reach whether the statutes involved in Aguilar's case were clear because plea counsel was given clear advice by an immigration attorney, relied on that advice, and told his client and the immigration attorney he understood and would comply with that advice. Plea counsel knew Aguilar was not a United States citizen and was concerned with the immigration consequences of the criminal charges. Plea counsel was told by Aguilar's immigration attorney that a felony conviction would make Aguilar ineligible to retain his temporary protected status, leave him with no legal status, and render him removable. Plea counsel told the immigration attorney that he understood her advice, and in his affidavit stated that he believed he had understood her advice. Plea counsel negotiated a plea agreement that he believed conformed with the immigration attorney's advice, but did not. As a result of the plea agreement, Aguilar pleaded guilty to a state-jail felony, became ineligible to retain temporary protected status, lost his legal status, and became removable. In his affidavit, plea counsel states, "I take full responsibility for my error as I was advised in advance

that a felony conviction would result in negative immigration consequences."

Deficiency is easy to find in this case. Plea counsel was advised that a felony conviction would cause Aguilar to lose his temporary protected status and render him removable. This advice was clear. Plea counsel indicated to the immigration attorney and his client that he not only understood the advice but would rely on it. Despite all of this and through his own fault, plea counsel negotiated a plea agreement for a state-jail felony and incorrectly advised Aguilar that the plea would not have negative immigration consequences. We hold that Aguilar's plea counsel was deficient for providing incorrect advice to Aguilar despite clear and correct instructions from an immigration attorney, upon whom plea counsel assured his client he would rely.

### V.

■ When an ineffective-assistance-of-counsel claim relates to a guilty plea, the prejudice prong of *Strickland* requires the defendant to demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." [31] In *Ex parte Torres*, we held that "the *Hill* [*v. Lockhart*] standard appropriately governs the prejudice injury in the context of an ineffective-assistance-of-counsel claim under *Padilla*." [32] In the recently decided *Lee v. United States* opinion, the United States Supreme Court also held that the *Hill* standard is the appropriate test for prejudice under *Padilla*.[33]

■ The habeas judge found that Aguilar had "established that he would not

---

31. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

32. *Ex parte Torres*, 483 S.W.3d 35, 47 (Tex. Crim. App. 2016).

33. *Lee v. United States*, —— U.S. ——, 137 S.Ct. 1958, 1965, 198 L.Ed.2d 476 (2017).

have pled guilty but would have insisted on going to trial but for Udorah's incorrect counsel." Aguilar attached several affidavits to his habeas application which support this finding. First, plea counsel's affidavit stated that Aguilar instructed him to discuss plea negotiations with the immigration attorney "to ensure that [Aguilar] would not suffer negative immigration consequences or be at risk of deportation from the United States." Further, in plea counsel's court-ordered affidavit he states that "[Aguilar's] primary concern was not to lose his right to remain in the United States or not to be deported out of the United States." Aguilar states in his affidavit that, "I would never have agreed and entered a guilty plea if I had known or thought that it would cause me a problem with immigration or put me in danger of deportation." According to the affidavit, he pleaded guilty only because he believed that plea counsel was acting on the immigration attorney's advice and the plea would have no negative immigration consequences. This evidence supports the habeas judge's finding and, as such, we give it almost total deference.[34] Based on this finding and its support in the record, we hold that Aguilar has demonstrated that, but for counsel's error, he would not have pleaded guilty and would have insisted on a trial.

The State argues that while Aguilar has shown prejudice he has not shown harm. While habeas has a general harm standard, that standard is only at play when we have not previously set out a definition for prejudice or harm.[35] Thus, by satisfying

*Strickland*'s prejudice prong, Aguilar has shown harm.

## VI.

We extend *Padilla* to the circumstances where a defendant's guilty plea causes him to automatically lose legal immigration status and become removable. Aguilar's guilty plea, which was based on his counsel's incorrect advice, will cause him to lose his temporary protected status and render him removable. Because Aguilar has shown he would not have pleaded guilty if he had been correctly advised of the relevant immigration consequences, we hold that ineffective assistance of counsel rendered his plea involuntary and vacate his plea.

Yeary, J., filed a concurring opinion in which Keel, J., joined.

Keller, P.J., filed a dissenting opinion.

Yeary, J., filed a concurring opinion in which Keel, J., joined.

The Court grants post-conviction habeas corpus relief to Applicant based on the United States Supreme Court's opinion in *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). I am not convinced that Applicant is entitled to relief on the basis of that opinion.

Applicant was indicted for the third degree felony offense of evading arrest with a motor vehicle. Tex. Penal Code §§ 38.04(a) & (b)(2)(A). On advice of counsel, he pled guilty to the lesser offense of attempted evading arrest with a motor

---

**34.** *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013).

**35.** *See Ex parte Martinez*, 330 S.W.3d 891, 903 (Tex. Crim. App. 2011) ("[T]he *Strickland* prejudice prong ... presents a more difficult burden than does the harm analysis under Rule 44.2 of the Texas Rules of Appellate Procedure[.]"); *Ex parte Moussazadeh*, 361

S.W.3d 684, 690-91 (Tex. Crim. App. 2012) ("[T]he standard for the analysis of harm under the *Strickland* protocol ... may be stated generally as 'but for the erroneous advice of counsel, the applicant would not have plead [sic] guilty.'") (citing *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010)).

vehicle, a state jail felony. TEX. PENAL CODE § 15.01(d). Though convicted of a state jail felony, he was punished under Section 12.44(a) of the Penal Code, which permits the trial court to punish a state jail felon "by imposing the confinement permissible as punishment for a Class A misdemeanor[.]" TEX. PENAL CODE § 12.44(a). The trial court assessed his punishment at 180 days in the county jail, and Applicant has already served that term of incarceration.

In *Padilla*, the Supreme Court held that, "when the deportation consequence" of a guilty plea "is truly clear," trial counsel's Sixth Amendment "duty to give correct advice is equally clear." 559 U.S. at 369, 130 S.Ct. 1473. Applicant does not now allege that his attorney was ineffective for failing to inform him that a conviction for the offense of attempted evading arrest with a motor vehicle would—in itself—render him eligible for deportation under federal law. And with good reason. As far as I can tell, a conviction for this offense does not itself subject Applicant to deportation because it does not amount to a "crime of violence" for which Applicant received at least a one-year sentence, as required by 8 U.S.C. § 1101(a)(43)(F). *See United States v. Segura–Sanchez*, 452 Fed. Appx. 471, 473 (5th Cir. 2011) ("crime of violence" is not an "aggravated felony," for purposes of 8 U.S.C. § 1227(a)(2)(A)(iii), unless it is a crime "for which the term of imprisonment [is] at least one year"). Applicant's term of confinement was only six months. At best, then, it is both "unclear" and "uncertain" that, by pleading guilty to the inchoate offense of attempted evading arrest with a motor vehicle, particularly in exchange for a 180-day sentence, Applicant was subjecting himself to eligibility for deportation. *Padilla*, 559 U.S. at 369, 130 S.Ct. 1473.

According to *Padilla*, "[w]hen the law is not succinct and straightforward ...., a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* Applicant fails to allege or prove that his attorney misadvised him about this generalized "risk of adverse immigration consequences." Indeed, the trial court specifically admonished Applicant that "a plea of guilty ... may result in your deportation, exclusion from admission to the United States or denial of naturalization under federal law." In short, this case is hardly on all fours with *Padilla*.

What Applicant *has* alleged and proven is as follows: Applicant, a Honduran national, had already retained an immigration lawyer prior to his arrest for this offense, in an effort to become a "Lawful Permanent Resident." Applicant retained a different attorney to represent him in the criminal proceedings, but the two attorneys agreed to confer with respect to any plea negotiations so that Applicant's criminal defense attorney could attempt to arrange a plea bargain that would not endanger Applicant's "Temporary Protected Status," which has allowed him to remain in this country, where he has resided since he was a child. Applicant's immigration lawyer advised his criminal defense attorney that a felony conviction would jeopardize his Temporary Protected Status, make him ineligible for Lawful Permanent Resident status, "and thus subject him to deportation from the United States." Affidavit of Amanda Waterhouse, Immigration Attorney. She further advised Applicant's criminal defense attorney that he should seek a misdemeanor conviction carrying a sentence of no greater than six months' duration, which, she assured him, "would not prevent [Applicant] from becoming a Lawful Permanent Resident." *Id.* On the basis of this advice, Applicant's criminal defense attorney believed that Applicant could safely plead guilty to the state jail

felony offense so long as he was punished under Section 12.44(a) of the Penal Code and received a sentence of six months or less. He therefore advised Applicant to accept the State's plea offer. But he has now signed an affidavit in which he states, "I now recognize that the plea agreement that I negotiated and advised [Applicant] to accept will absolutely have negative immigration consequences up to and including making him 'deportable.'" Affidavit of Alex N. Udorah, Criminal Defense Attorney.

Because it is (at best) unclear and uncertain that Applicant's conviction for attempted evading arrest with a motor vehicle would, in itself, subject Applicant to deportation, it seems to me that his trial counsel had no greater duty under *Padilla* than to advise Applicant generally that his guilty plea could have deportation consequences. We should not unilaterally extend the reach of *Padilla* to require a criminal defense attorney to advise his foreign national client about how a guilty plea will impact such matters as the renewal of his Temporary Protected Status or his application for Lawful Permanent Resident status. As this case aptly illustrates, specific advice relating to those kinds of matters should ordinarily be left to immigration law attorneys.

Even so, having chosen to give Applicant more specific advice with respect to potential deportation consequences than the minimum required of him by *Padilla*, Applicant's trial attorney assumed a Sixth Amendment obligation concerning the more specific immigration advice—to advise his client *correctly*. *See* George E. Dix & John M. Schmolesky, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 40:74, at 600 (3d ed. 2011) ("If defense counsel

gives the client erroneous, material advice about the terms or consequences of entering a negotiated plea of guilty or nolo contendere, that may make the plea involuntary.") (citing, *e.g.*, *Ex parte Griffin*, 679 S.W.2d 15, 17 (Tex. Crim. App. 1984) ("In several recent cases this Court has reversed convictions or granted habeas corpus relief because of a defense attorney's inaccurate advice to a defendant about the consequences of his plea of guilty.")); *Ex parte Moody*, 991 S.W.2d 856, 858 (Tex. Crim. App. 1999) ("Counsel had the obligation to provide Applicant with accurate information[.]"); *Ex parte Moussazadeh*, 361 S.W.3d 684, 691-92 (Tex. Crim. App. 2012) (trial counsel has a duty to give accurate information with respect to parole eligibility). Trial counsel's mistaken understanding of the immigration lawyer's advice in this case misled Applicant into accepting a guilty plea he would not otherwise have accepted, and thereby rendered Applicant's plea involuntary. For this reason, I agree that Applicant is entitled to post-conviction habeas corpus relief on *that* ground.

On this basis, I concur only in the result.

Keller, P.J., filed a dissenting opinion.

The Court acknowledges that it extends the holding of *Padilla*[1]—a case involving the deportation consequences of a plea—to a case that involves the anticipated loss of a protected status, which might ultimately lead to deportation. I would not extend *Padilla*'s holding to such a case. The Court also makes statements about the habeas harm standard that have no basis in our jurisprudence. For these reasons, I must respectfully dissent.

Some crimes automatically make an alien deportable.[2] The Court has not sug-

---

1. *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010).

2. *See Torres v. Lynch*, — U.S. —, 136 S.Ct. 1619, 1623, 194 L.Ed.2d 737 (2016) ("The

gested that Applicant's state-jail felony is such a crime. Instead, the Court concludes that the state-jail felony conviction will result in terminating applicant's "Temporary Protected Status" (TPS) under federal law that allows him to be present in this country. But applicant's status has not yet been terminated, so he is not yet deportable. Because applicant has not yet been determined to be deportable, we cannot know whether some other factor or circumstance may intervene to prevent applicant from becoming deportable. And if he never becomes deportable, then his plea cannot be said to be involuntary based on deportation consequences.

Applicant was in the process of attempting to adjust his status and may perhaps be able to adjust his status before his TPS is terminated. Even if that fails, applicant may be able to avoid deportation through other means, such as applying for asylum or withholding of removal.[3] Or some other factor of which we are unaware may come into play to prevent applicant from being deported or even from ever being considered deportable. We should at least wait until applicant's TPS has actually been terminated before deciding to grant relief.

With regard to harm, the Court says, "While habeas has a general harm standard, that standard is only at play when we have not previously set out a definition for prejudice or harm." This is an overly broad statement that is not supported by the cases cited. *Moussazadeh* addressed the appropriate standard for analyzing the prejudice prong of *Strickland.*[4] *Martinez* explained that the *Strickland* prejudice standard is more onerous on defendants than the harm standards found in Rule 44.2,[5] so meeting the *Strickland* standard necessarily satisfied the general harm standard applicable in a direct appeal. That does not mean, though, that a prejudice standard that is a component of a constitutional violation will always displace a more generally applicable harm standard. In *Ex parte Fierro*, in fact, we said the general harm standard was not displaced, where the general harm standard (on habeas) was more onerous on defendants than the materiality standard that was a component of the constitutional violation (knowing use of perjured testimony).[6] However, *Fierro* suggested, and

---

INA makes any alien convicted of an "aggravated felony" after entering the United States deportable.").

**3.** *See Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 348, 125 S.Ct. 694, 160 L.Ed.2d 708 (2005) ("If aliens would face persecution or mistreatment in the country designated under § 1231(b)(2), they have a number of available remedies: asylum, § 1158(b)(1); withholding of removal, § 1231(b)(3)(A); relief under an international agreement prohibiting torture, see 8 CFR §§ 208.16(c)(4), 208.17(a) (2004); and temporary protected status, 8 U.S.C. § 1254a(a)(1)."); *Blandino–Medina v. Holder*, 712 F.3d 1338, 1340-41, 1343-48 (9th Cir. 2013) (foreign national on TPS was sentenced to a felony but applied for withdrawal of removal—remanded to determine whether the offense was ineligible for withdrawal of removal as a "particularly serious crime,"

which, absent a five year sentence or more, must be determined on a case-by-case basis).

**4.** *See Ex parte Moussazadeh*, 361 S.W.3d 684, 690-91 (Tex. Crim. App. 2012).

**5.** *Ex parte Martinez*, 330 S.W.3d 891, 903-04 (Tex. Crim. App. 2011).

**6.** *See Ex parte Fierro*, 934 S.W.2d 370, 373-74 (Tex. Crim. App. 1996) ("But, because the materiality standard for the knowing use of perjured testimony is the Chapman harmless error standard, the materiality standard is more stringent (on the State) than either the state or federal habeas harmless error standards. This leaves open the possibility of applying a separate harmless error standard on collateral review. . . . In accordance with the above discussion, we hold that the knowing use of perjured testimony is trial error, subject to the harmless error standard applicable on habeas corpus.")

*Ghahremani* later held, that the habeas harm standard would not apply if the applicant had no opportunity to raise the issue on direct appeal.[7] Whether the general habeas harm standard applies, then, depends on whether direct appeal was an available remedy, not on whether the claim at issue incorporates a harm standard of its own, unless the harm standard is actually more onerous on defendants than the general habeas harm standard (e.g., actual innocence).[8]

I respectfully dissent.

---

7. *See id.* at 374 n.10; *Ex parte Ghahremani,* 332 S.W.3d 470, 481-83 (Tex. Crim. App. 2011).

8. The standard for actual innocence, "by clear and convincing evidence that no reasonable juror would have convicted [the defendant] in light of the new evidence," *Ex parte Elizondo,* 947 S.W.2d 202, 209 (Tex. Crim. App. 1996) is an example of a harm standard that is more onerous on defendants than the preponderance of the evidence standard generally applicable on habeas. *See Fierro,* 934 S.W.2d at 372.