**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-20-00192-CR**
_____

**EX PARTE ADELIO ALEXANDER BARAHONA**

**On Appeal from the County Court at Law No. 5**
**Montgomery County, Texas**
**Trial Cause No. 18-30764**

**MEMORANDUM OPINION**

Adelio Alexander Barahona appeals from a ruling made by the County Court at Law Number 5 denying his writ of habeas corpus. In his petition, Barahona—a non-citizen—asked the habeas court to overturn a conviction he incurred in 2018 on a Class B misdemeanor DWI. The conviction depended on his guilty plea under a plea bargain agreement, an agreement he claimed he would not have made had his attorney advised him correctly about the consequences resulting from a conviction on his status as a non-citizen. According to Barahona, he can no longer live in the United States because of the conviction on the 2018 DWI because it disqualified him

1

from a federal program granting him Temporary Protected Status, a program allowing certain non-citizens to remain in the United States.

Having reviewed the evidence the habeas court relied on in denying Barahona's petition and his motion for new trial, we hold the court abused its discretion by denying Barahona's request to set aside his conviction and grant his request for a new trial. We reverse the habeas court's order and grant Barahona's motion for new trial.[1]

## Background

This case has a complicated procedural history. This is the third time Barahona has appeared in this Court seeking relief from the habeas court's rulings on his petitions seeking to overturn his conviction in a post-judgment proceeding in which he challenged the validity of his plea.

The case that led to Barahona's conviction on the 2018 DWI began in March 2017 when the State charged Barahona with a Class A misdemeanor DWI. In April 2018, Barahona and the State reached a plea agreement on that charge. Under the agreement, in return for the State's agreement to reduce the charge to a Class B misdemeanor DWI, Barahona agreed to plead guilty. The trial court approved the plea bargain following a hearing on the plea and then signed a judgment that tracks

---

[1]Tex. R. App. P. 51.2(c)(1).

the terms of the plea bargain. In the judgment, the court found Barahona guilty on a reduced charge, a Class B misdemeanor DWI.[2]

The record before the habeas court includes the plea papers Barahona signed as part of the plea he entered on his 2018 DWI. The plea papers warn Barahona of several consequences associated with the plea. One of the warnings states that if the defendant is "not a citizen of the United States, [a] plea of guilty or nolo contendere may result in deportation, exclusion from admission to this country, or denial of naturalization under federal laws[.]" The record before the habeas court also includes the reporter's record from the hearing on the plea. The transcript of the hearing reflects that, before accepting the plea, the trial court asked Barahona's attorney whether he wanted "to go over any of the immigration issues on the record[.]" Barahona's attorney responded: "No. I've gone over it. I've consulted with an immigration attorney and gone over the paperwork to file with the plea to feel comfortable." After that, Barahona pleaded guilty. The judgment the trial court signed tracks the terms of the plea agreement between Barahona and the State.

---

[2]*Compare* Tex. Penal Code Ann. § 49.04 (providing generally that driving while intoxicated is punishable as a Class B misdemeanor), *with id*. § 49.09(b) (providing that if the State alleges and proves the defendant has one prior conviction for a DWI, the second DWI is punished as a Class A misdemeanor). The judgment on which the conviction rests reflects the State abandoned the allegation in the indictment alleging Barahona had a prior conviction on another DWI.

A month after the trial court signed the judgment on Barahona's 2018 DWI, the director of the federal agency responsible for administering the rules applicable to aliens living in the United States with protected status notified Barahona the agency had decided to deny his request for Temporary Protected Status. Under the program, aliens granted Temporary Protected Status, with the permission of the Attorney General of the United States, may remain in the United States if qualified under the rules and regulations applicable to the federal program.[3]

After the agency notified him that he had not been granted Temporary Protected Status, Barahona petitioned for habeas relief and sought to overturn his guilty plea to the 2018 DWI. In his June 2018 petition for habeas relief, Barahona alleged the attorney who represented him in the plea hearing gave him bad advice about the immigration consequences certain to result from his plea.[4] After finding the attorney who represented Barahona on his 2018 DWI "clearly complied with the

---

[3]The notice Barahona received is in the record. It states: "The record establishes that you have been convicted of no fewer than two misdemeanor offenses committed in the United States and are therefore statutorily ineligible for TPS under [federal law]." The notice advised Barahona the agency had learned Barahona had incurred two convictions for DWIs, one in August 1999 and a second in 2018. The parties do not dispute that the 2018 DWI at issue is the second DWI conviction referred to in the notice.

[4]*See Ex parte Barahona*, No. 09-18-00328-CR, 2018 Tex. App. LEXIS 8886, at *1 (Tex. App.—Beaumont Oct. 31, 2018, no pet.) (mem. op., not designated for publication). To be sure, the record shows the attorney who represented Barahona at trial is not the same attorney that he hired to represent him in the appeal he pursued from the habeas proceeding Barahona filed in 2018.

standards known to this court with regard to advising his client of [the] immigration consequences" of his plea, the habeas court denied Barahona's petition for habeas relief in which he sought to overturn his plea.

Barahona appealed the ruling the habeas court made on the petition for habeas corpus he filed in 2018.[5] On appeal, this Court held it lacked jurisdiction to consider the appeal because the attorney who had filed it for Barahona failed to file a timely notice of appeal.[6]

In February 2019, Barahona filed a second petition for habeas relief. Like his 2018 petition, Barahona's 2019 petition challenged the validity of Barahona's guilty plea on his 2018 DWI. The habeas court conducted a hearing on the merits of the habeas petition Barahona filed in 2019. Following the hearing, the habeas court issued findings. Among those, the habeas court found Barahona had failed to show why he failed to produce the evidence he used to support his 2019 application for habeas relief since that same evidence was available to him when he sought relief in the writ of habeas corpus he filed in 2018. But just in case a court were to disagree with that ruling, the habeas court also found that Barahona had failed to establish he was entitled to relief from his conviction on his 2018 DWI. Among its findings, the habeas court in ruling on Barahona's 2019 petition found: (1) Barahona failed to

---

[5]*Id.*
[6]*See* Tex. R. App. P. 26.2(a)(1).

establish there was a reasonable probability that, but for his trial attorney's incorrect advice, he would have pleaded not guilty and insisted on going to trial; (2) Barahona was not entitled to effective counsel in the proceedings on his first petition for habeas relief, the petition Barahona filed in June 2018; and (3) Barahona was not entitled to an out-of-time appeal even though his attorney had failed to timely perfect an appeal from the habeas court's ruling on Barahona's first habeas application for relief, the application that Barahona's attorney filed in June 2018.[7]

Barahona then appealed from the ruling denying his 2019 petition for habeas relief. This time, Barahona had another attorney, who timely perfected the appeal. But in deciding that appeal, we agreed with the habeas court that Barahona had failed to establish why the evidence he presented to support his 2019 application was not reasonably available in 2018 when he filed his first application for the writ.[8] But we also disagreed with the habeas court that Barahona had not shown he had a right to have his request to be allowed to pursue an out-of-time appeal from the ruling on the first application Barahona filed for habeas relief. So we overruled the habeas court's ruling in part and granted Barahona the right to file an out of-time appeal.[9]

---

[7]*Ex parte Barahona*, No. 09-19-00125-CR, 2020 Tex. App. LEXIS 1838, at *2-5 (Tex. App.—Beaumont Mar. 4, 2020, pet. ref'd) (mem. op., not designated for publication).

[8]*See* Tex. Code Crim. Proc. Ann art. 11.59; *Ex parte Barahona*, 2020 Tex. App. LEXIS 1838, at *8-9.

[9]*Id*. at *9-10.

Explaining that ruling, we stated: "The right to appeal a habeas court's ruling is a statutory right, granted by the legislature."[10] To correct the habeas court's error, we reversed the ruling to the extent that the habeas court denied Barahona's request for an out-of-time appeal and directed the habeas court on remand to grant Barahona's request for permission to file an out-of-time appeal.[11]

Within thirty days of the mandate issuing on Barahona's second appeal, Barahona filed a motion in the habeas court in which he asked the habeas court for a new trial. Barahona attached several exhibits to his motion for new trial. The documents attached to Barahona's motion for new trial that are discussed in this opinion are:

- An affidavit from the attorney who represented Barahona on his 2018 DWI.

- The plea papers Barahona signed when he pleaded guilty to the 2018 DWI. One set is in Spanish, while the other is in English.

- An affidavit Barahona signed in January 2019. The affidavit states: "[The attorney representing me on my 2018 DWI] further advised me, based on the information that he had obtained from the immigration attorney, that accepting the prosecution's plea offer and entering a guilty plea in the instant case would not harm my immigration status, including my ability to remain in the United States under TPS status. Based on [the attorney's] assurances to me that pleading guilty in the instant case would not negatively impact my immigration status, including my TPS status, I elected to plead guilty rather than go to trial."

---

[10]*Id*. at \*10.
[11]*Id*. at \*12.

- A copy of the formal decision the federal agency issued on Barahona's application for Temporary Protected Status. The agency's formal decision reflects it reached a final decision on the application in October 2018. The notice advised Barahona that the agency found he was ineligible for Temporary Protected Status because he had incurred two criminal convictions, one in August 1999 and the second in October 2018, on misdemeanor DWIs.

- A transcript from the sentencing hearing the trial court conducted on Barahona's 2018 DWI. The transcript reflects Barahona pleaded guilty under a plea agreement. Under the agreement, the State agreed to recommend that the trial court assess Barahona an "800-dollar fine and court costs, 3 days credited by time served, [and] ninety-day driver's license suspension." Thus, under the plea agreement, Barahona did not receive a sentence requiring him to spend any more time in jail.

- A transcript from the hearing the habeas court conducted on Barahona's second habeas application, the application filed in 2019. The attorney who represented Barahona on his 2018 DWI testified in the 2019 hearing. The transcript of the testimony from the hearing shows the attorney testified that, after he spoke to an immigration attorney, he "gathered from that conversation [] that [if Barahona] plead[ed] to a second, reduced to a first [offense] on someone who had had the TPS status[, the additional conviction] was not going to hurt them or affect them. And then I conveyed that to Mr. Barahona."

- The trial attorney who represented Barahona on his plea also testified during the 2019 hearing on Barahona's second application for habeas relief that **(**1) he considered the 2018 case a "defendable case[;]" (2) he considered the plea agreement "a pretty good offer[;]" (3) he knew about Barahona's conviction on an earlier DWI and he was concerned when he represented Barahona on the second DWI in 2018 whether a conviction in the case might affect Barahona's status to receive Temporary Protected Status.

Issues

Barahona raises two issues in the brief he filed to support this appeal. But both make the same arguments in claiming the habeas court abused its discretion in denying the application Barahona filed for habeas relief in 2018 and in denying his motion for new trial given the evidence he presented in that court. In arguing the issues, Barahona relies heavily on the documents attached to his motion for new trial.

Standard of Review and Applicable Law

Article 11.09 of the Texas Code of Criminal Procedure provides that defendants convicted of misdemeanors may seek relief from such convictions by filing applications for writs of habeas corpus.[12] In seeking habeas relief, the applicant bears the burden of proving his claims by a preponderance of the evidence.[13] When considering such applications, the habeas court acts as the sole factfinder and resolves any dispute over issues of fact.[14]

In the appeal from a ruling on an application for habeas relief, the appellate court views "the evidence in the record in the light most favorable to the judge's

---

[12]Tex. Code Crim. Proc. Ann. art. 11.09.
[13]*Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011); *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002).
[14]*Ex parte Garcia*, 353 S.W.3d 785, 788 (Tex. Crim. App. 2011).

ruling and must uphold that ruling absent an abuse of discretion."[15] When evaluating a ruling by a habeas court that a defendant did not enter a knowing and voluntary plea, we must determine whether the habeas court abused its discretion after examining the ruling under the standards that apply to effective assistance of counsel and in the light that favors the ruling the habeas court made in resolving any issues of fact.[16] On appeal, we must give nearly total deference to the habeas court's findings of fact "when they are supported by the record, especially when those findings are based on credibility and demeanor."[17] The same deferential standard applies to both written and implied findings, assuming the finding are supported by the record.[18] But "if the resolution of the ultimate question turns only on the application of legal standards, the appellate court reviews those determinations de novo."[19] And we will uphold the habeas court's ruling if it is correct under the law applicable to the case.[20] Even when the habeas court's ruling turns on a mixed question of law and fact, we defer to the habeas court's factual findings when

---

[15]*Diamond v. State*, 613 S.W.3d 536, 544 (Tex. Crim. App. 2020); *Charles*, 146 S.W.3d at 208.

[16]*See Montgomery v. State*, 810 S.W.2d 372, 392 (Tex. Crim. App. 1991) (op. on reh'g).

[17]*Diamond v. State*, 613 S.W.3d at 544.

[18]*Id.*

[19]*Id.*

[20]*Id.*

resolving the appeal, "but [we] review the [habeas court's] ultimate legal conclusion of materiality de novo."[21]

Barahona's claims hinge on whether his plea was involuntary based on his claim that the attorney who represented him in the plea hearing advised him incorrectly about the immigration consequences of pleading guilty to a second DWI. To establish a claim of ineffective assistance of counsel, petitioners must prove: (1) trial counsel's performance was deficient, and (2) prejudice resulted from trial counsel's deficient performance.[22] Because "there are countless ways to provide effective assistance in any given case, a reviewing court must be highly deferential and indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]"[23]

A decade ago, the United States Supreme Court spelled out what an attorney representing a non-citizen charged with a crime must do to provide the client with effective assistance, explaining the attorney must give the client correct advice on the immigration consequences of pleading guilty when those consequences are clear.[24] In *Padilla*, the Supreme Court held that when the consequences to the non-

---

[21]*Id.*

[22]*Ex parte Aguilar*, 537 S.W.3d 122, 126 (Tex. Crim. App. 2017) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

[23]*Ex parte Martinez*, 330 S.W.3d 891, 900 (Tex. Crim. App. 2011) (cleaned up).

[24]*Padilla v. Kentucky*, 559 U.S. 356, 369 (2010).

citizen of being deported as a result of pleading guilty are "truly clear, . . . the duty to give correct advice is equally clear."[25] The duty is imposed on the attorney because "[t]he severity of deportation—the equivalent of banishment or exile—only underscores how critical it is for counsel to inform [his] noncitizen client that he faces a risk of deportation."[26] Thus, before deciding to plead guilty, the non-citizen has the right to be informed by his attorney about the significant consequences when those consequences are clear and will result from the plea.[27] That said, "[s]crutiny of counsel's performance must [also] be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight. Counsel's performance should be judged by whether it is reasonable under prevailing professional norms."[28]

Here, the habeas court's ruling turns on three things, (1) whether the immigration consequences of Barahona's plea were truly clear; (2) whether Barahona's attorney failed to provide him with correct advice; and if so, (3) whether he was prejudiced by the advice.[29] We review the first criteria under a de novo standard while the remaining two are treated as mixed questions of law and fact.[30]

---

[25]*Id.*
[26]*Id.* at 373-74 (cleaned up).
[27]*Id.* at 364; *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010).
[28]*Ex parte Chavez*, 560 S.W.3d 191, 203-04 (Tex. Crim. App. 2018) (cleaned up).
[29]*See Miller v. State*, 548 S.W.3d 497, 498 (Tex. Crim. App. 2018).
[30]*Charles*, 146 S.W.3d at 208.

On appeal, the State argues this Court should not consider the evidence Barahona attached to his motion for new trial in resolving the appeal because that evidence was not before the habeas court when it ruled on Barahona's first application for a writ of habeas corpus, the application he filed in 2018. But we disagree given the unique circumstances prompting this appeal, an appeal that resulted from our prior ruling granting Barahona the right to file an out-of-time appeal. In Barahona's second appeal, this Court ordered the habeas court to grant Barahona's request for an out-of-time appeal, a ruling that addressed Barahona's right to challenge the ruling the habeas court made on Barahona's first application for relief, the application that he filed in 2018.[31] On remand, however, Barahona then filed another motion, a motion for new trial. So the question is whether that motion was a timely-filed motion as it relates to the ruling the habeas court made in deciding the first application Barahona filed for habeas relief in 2018.

The record shows that Barahona filed his motion for new trial within thirty days of the date this Court issued its mandate.[32] Under Texas law, "[t]he effect of granting an out-of-time appeal is that it restores the defendant to the position he occupied immediately after the trial court signed the [appealable order]."[33] For that reason, the mandate restored Barahona to the position that he occupied in June 2018

[31]*Ex parte Barahona*, 2020 Tex. App. LEXIS 1838, at *12.
[32]*Ex parte Barahona*, 2018 Tex. App. LEXIS 8886, at *1.
[33]*Mestas v. State*, 214 S.W.3d 1, 4 (Tex. Crim. App. 2007).

13

as of the date the habeas court signed its order denying the first application Barahona filed for habeas relief. And Barahona moved for a new trial within thirty days of the date our mandate issued, so it was a timely filed motion given the date the habeas court signed the order in 2018 denying Barahona's first petition seeking a writ.[34]

The record also shows the habeas court denied Barahona's motion for new trial. The order denying the motion states the habeas court considered the exhibits attached to the motion in denying the motion. So the record shows the habeas court was aware of the motion for new trial and that it ruled on the motion.[35]

Rulings denying motions for new trial are reviewed for abuse of discretion. Under that standard, the appellate court will reverse the ruling on the motion only if the ruling was clearly erroneous and arbitrary.[36] A court abuses its discretion in denying a motion for new trial only if no reasonable view of the record supports the ruling.[37] In our review of the ruling, we view the evidence used to support the motion for new trial in the light that favors the ruling on the motion.[38] When deciding whether to grant a request seeking a new trial, the lower court is the sole judge of

---

[34]*See* Tex. R. Civ. P. 329b(a) (providing that "[a] motion for new trial, if filed, shall be filed prior to or within thirty days after the judgment or other order complained of is signed").

[35]*See* Tex. R. App. P. 33.1 (Preservation; How Shown).

[36]*Okonkwo v. State*, 398 S.W.3d 689, 694 (Tex. Crim. App. 2013).

[37]*Id*.

[38]*Id*.

the credibility of the testimony and the affidavits supporting the motion.[39] In the appeal, we will examine the totality of the record while viewing the evidence in the light that favors the ruling challenged in the appeal to assess whether, under an objective standard, an abuse of discretion occurred.[40]

Analysis

*Deficient Performance*

To establish a claim of ineffective assistance, the defendant must prove the representation he received in his trial fell below an objective standard of reasonableness under the prevailing norms.[41] On appeal, Barahona argues the evidence shows the attorney who represented him on his 2018 DWI told him that pleading guilty would not adversely affect his right to stay in the United States. Having carefully studied the evidence, we conclude the only evidence in the record shows Barahona's attorney gave him bad legal advice about the immigration consequences that later resulted because of the plea.

As to the advice, the evidence shows the attorney representing Barahona in 2018 on the DWI testified he thought the consequences of Barahona's decision to plead guilty were unclear, yet he still advised Barahona to plead guilty. Barahona's attorney also testified that he told Barahona there would be no adverse consequences

---

[39]*Id.*
[40]*Id.*
[41]*Strickland*, 466 U.S. at 688.

of pleading guilty based on the information he was given by an attorney who practices immigration law, an attorney whose name the attorney could not recall. But even if Barahona's attorney got bad information from some other attorney and relied on it, the advice he gave Barahona was wrong about the immigration consequences that were the direct result of the plea. And one need look no further than to the law to understand why the Attorney General could not give a non-citizen in Barahona's situation Temporary Protected Status. Under federal law, the Attorney General of the United States cannot grant Temporary Protected Status to non-citizens if the non-citizen has been convicted of committing two or more DWIs.[42] Even more, Congress elected to prohibit the Attorney General from waiving the multiple DWI provision in administering the program.[43]

Here, whether Barahona's attorney performed deficiently turns solely on the application of a legal standard given the undisputed evidence showing what the attorney told Barahona and the law showing the consequences of a decision to plead guilty under the circumstances Barahona faced were truly clear. But the record shows the habeas court found otherwise, as that court found Barahona's attorney

---

[42]*See* 8 U.S.C. 1254a(2)(B) (providing that "[a]n alien shall not be eligible for temporary protected status under this section if the Attorney General finds that . . . the alien has been convicted of any felony or 2 or more misdemeanors committed in the United States"); *see also Padilla*, 559 U.S. at 368.

[43]8 U.S.C. 1254a(c)(2)(A)(iii) (providing the Attorney General shall not waive the requirement in subsection 1254a(2)(B)).

gave him reasonable professional assistance under the standard that applied based on "the standards known to this court[.]"

We conclude the evidence supports only one conclusion: Barahona's attorney gave him bad advice about the clear immigration consequences of pleading guilty to the 2018 DWI. We hold the habeas court abused its discretion by finding otherwise.[44]

*Prejudice*

To show prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[45] But courts should be careful before overturning a defendant's plea under circumstances that show the defendant benefitted from the plea bargain and later decided, with the benefit of hindsight, that he would have rather pleaded not guilty.[46]

Several factors are used to evaluate claims alleging habeas courts abused their discretion in rejecting a finding of prejudice. These include "the evidence supporting an applicant's assertions, the likelihood of his success at trial, the risks the applicant

---

[44]*Padilla*, 559 U.S. at 369 (noting that "when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear").
[45]*Hill v. Lockhart*, 474 U.S. 52, 59 (1985).
[46]*Lee v. U.S.*, 137 S.Ct. 1958, 1967 (2017).

would have faced at trial, the benefits received from the plea bargain, and the trial court's admonishments."[47]

In its brief, the State points to the fact the plea papers that Barahona signed as part of his plea warned him of the immigration consequences of pleading guilty. The habeas court also relied on those admonishments in its findings, as that court noted the attorney representing Barahona on his 2018 DWI told the court in the plea hearing that he had discussed the plea with Barahona before Barahona made his decision to enter a plea. Add to that the fact the habeas court found that Barahona answered the "standard plea bargain questioning, [he] plead[ed] guilty . . . and was sentenced, as agreed" in the hearing on his plea.

To be sure, the plea papers contain Barahona's signature. They also include a boilerplate warning that generally addresses the *potential* immigration consequences of pleading guilty. But the admonishment in the plea papers does not provide a clear warning about the consequences to Barahona that were truly clear: instead, it states that defendants who are not citizens of the United States "*may*" be deported if they plead guilty or no contest.[48] And other than the written admonishment, the record fails to show the trial court gave Barahona any additional warnings about the immigration consequences of his plea in the hearing it conducted on his plea. Simply

---

[47]*Ex parte Torres*, 483 S.W.3d 35, 48 (Tex. Crim. App. 2016).
[48]Emphasis added.

put, the record reflects Barahona was never warned that, by pleading guilty, he *would be* deported. The only reasonable view of his record is that Barahona received affirmatively incorrect advice about the immigration consequences of his plea even though the harm that would result was even at that time clear.[49]

The only remaining question is whether Barahona would have pleaded guilty had he received proper legal advice about the consequences he faced when he did so.[50] In considering that question, we note Barahona did not have to prove he would have been acquitted had he pleaded not guilty and chosen to take the risks associated with a trial.[51]

Here, when Barahona decided to plead guilty, the only evidence in the record shows that Barahona valued and relied on his attorney's advice about the consequences of his plea and that pleading guilty would have no effect on his

---

[49]*U.S. v. Kayode*, 777 F.3d 719, 725 (5th Cir. 2014); (quoting *U.S. v. Urias-Marrufo*, 744 F.3d 361, 369 (5th Cir. 2014) for the proposition that "[i]t is counsel's duty, not the court's, to warn of certain immigration consequences, and counsel's failure cannot be saved by a plea colloquy")).

[50]*See Lee*, 137 S.Ct. at 1967 (noting that where deportation is the determining factor based on the evidence about the circumstances involved in that case, the defendant adequately demonstrated in the appeal that a reasonable probability existed to show he would have rejected the plea had he known that it would lead to mandatory deportation); *Ex parte Torres*, 483 S.W.3d at 48-49 ("[W]here the totality of the circumstances indicate that a defendant has placed a particular emphasis on the immigration consequence of a plea in deciding whether or not to accept it, this may constitute a circumstance that weighs in favor of a finding of prejudice.").

[51]*See Ex parte Torres*, 483 S.W.3d at 48.

Temporary Protected Status.[52] After Barahona learned that pleading guilty did have an adverse consequence to his right to remain in the United States under Temporary Protected Status, he filed a prompt application for habeas relief with the court.

Barahona's affidavit also shows that with the benefit of correct advice, he would have taken the risks associated with a trial to avoid the certain results to his Temporary Protected Status that were the result of his plea.[53] Nothing in the record shows the State had a strong case against Barahona to establish the State would have won had he chosen to go to trial on the 2018 DWI. Instead, the only evidence in the record shows the outcome if such a trial was unclear. The trial attorney who represented Barahona on his 2018 DWI testified in support of Barahona's application for habeas relief that he considered the case defensible. According to the attorney, had the case gone to trial the evidence would have shown the driver of the car Barahona rear ended while on a motorcycle fled the scene after the collision occurred.

Other evidence in the record shows Barahona is closely tied to the United States: He lives in Houston and has three children who live in the United States. The children are 17, 14, and 5 years old.[54] None of the evidence shows Barahona has close ties that still exist in his country of origin, El Salvador. To be fair, we note that

---

[52]*Padilla*, 559 U.S. at 359; *see also Torres*, 483 S.W.3d at 44-45.
[53]*Lee*, 137 S.Ct. at 1966.
[54]*See Ex parte Torres*, 483 S.W.3d at 50.

Barahona received several benefits from his plea. Under the plea agreement, Barahona was convicted on a reduced charge, a Class B misdemeanor DWI. Second, by pleading guilty, Barahona avoided the restrictions that would have resulted to his driver's license had he been convicted on a Class A misdemeanor DWI.[55] Third, by pleading guilty to a Class B DWI, Barahona reduced the exposure he would have otherwise faced to the longer jail sentence and fine available from a conviction on a Class A misdemeanor DWI. Fourth, by pleading guilty, Barahona avoided the increased fees he would have had to pay as compared to what he paid his attorney for representing him on his plea.

Even so, we cannot agree that any reasonable view of the record supports the habeas court's ruling denying Barahona's motion for new trial. Under the legal standards applicable to motions for new trial, we hold the evidence the habeas court considered when ruling on Barahona's motion for new trial shows Barahona received ineffective assistance of counsel and suffered prejudice as a direct result of making an involuntary plea. We conclude that the only objective view of the record is that reasonable probability existed that Barahona, but for his attorney's errors, "would not have pleaded guilty and would have insisted on going to trial."[56]

---

[55]*Compare* Tex. Penal Code Ann. § 49.04, *with id*. § 49.09.
[56]*Lee*, 137 S.Ct. at 1965 (quoting *Hill*, 474 U.S. at 118).

21

## Conclusion

For the reasons explained above, we hold the habeas court abused its discretion in denying Barahona's motion for new trial. We hold that Barahona received ineffective assistance on his 2018 DWI and that he proved his plea was involuntary.[57] We reverse the habeas court's order and remand the case for a new trial.[58]

REVERSED AND REMANDED.

_____
HOLLIS HORTON
Justice

Submitted on May 4, 2021
Opinion Delivered August 25, 2021
Do Not Publish

Before Kreger, Horton and Johnson, JJ.

---

[57]*See Ex parte Aguilar*, 537 S.W.3d at 129 (holding that ineffective assistance of counsel's erroneous advice of relevant immigration consequences rendered the defendant's plea involuntary).

[58]*See* Tex. R. App. P. 31.3.