Manchester District Court
No. 2011-446

THE STATE OF NEW HAMPSHIRE

v.

DEICY URENA ORTIZ

Argued: October 13, 2011
Opinion Issued: April 10, 2012

*Michael A. Delaney*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Michael J. Sheehan*, of Concord, by brief and orally, for the defendant.

CONBOY, J. The defendant, Deicy Urena Ortiz, appeals the Manchester District Court's (*Lyons*, J.) denial of her motion to withdraw her plea and vacate her misdemeanor conviction. On appeal, she contends her plea was not knowing because the court did not advise her of its potential adverse immigration consequences. We affirm.

The following facts are drawn from the record. The defendant has been a lawful resident of the United States since 2002. In November 2007, she was charged with the class A misdemeanor of shoplifting. On November 28, 2007, she appeared before the Manchester District Court (*Lyons*, J.) and entered a plea of *nolo contendere*. She was not represented by counsel. The defendant signed a standard acknowledgment and waiver of rights form, which, at the time, contained no acknowledgment of the potential adverse immigration consequences of entering either a guilty or *nolo* plea. During the plea colloquy, the court did not advise the defendant that her plea could result in adverse immigration consequences.

In March 2011, the federal government commenced removal proceedings against the defendant, contending that her shoplifting conviction constituted "a crime involving moral turpitude," a deportable offense. *See* 8 U.S.C. § 1182 (a)(2)(A)(i)(I) (2005). In response, the defendant filed a motion to withdraw her plea and vacate her conviction. In her motion, she argued that her plea was not "knowing" because: (1) the court failed to inform her "that a conviction could subject her to deportation"; and (2) she "was affirmatively misled (albeit innocently) [by the prosecutor] that there would be *no* such consequences." The State objected.

Acknowledging that it did not advise the defendant of the possible immigration consequences of her plea, the court concluded that the defendant raised a "pure issue of law," and, therefore, there was "no need for a hearing on the factual basis for [her] request." The court was not persuaded by the defendant's argument that *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010) (finding ineffective assistance of counsel where defense counsel failed to advise defendant that plea could result in deportation), supported "the proposition that she had a right to such notice of immigration consequences." Accordingly, the court denied the motion, concluding that because "[p]ossible immigration consequence is a collateral and not a direct consequence" of a misdemeanor conviction, the court was not obligated to provide notice. *See State v. Harper*, 126 N.H. 815, 821 (1985) ("We have said that a defendant need only be advised of the direct consequences of his guilty plea and not of consequences which are collateral." (quotations and brackets omitted)).

On appeal, the defendant continues to maintain that she did not enter into a knowing plea because the court failed to advise her of potential adverse immigration consequences. Alternatively, she contends that the State Constitution's Due Process Clause requires warning of possible immigration consequences to ensure the "fundamental fairness" of her plea. She maintains that she "would not have pleaded [*nolo contendere*] if she knew that she risked deportation by doing so."

Following oral argument, we remanded the case to the trial court to consider whether the unrepresented defendant entered a knowing plea to the shoplifting charge in light of her allegation that the prosecutor who negotiated the plea told her that a conviction would not affect her immigration status. After an evidentiary hearing, the trial court found that the defendant did not meet her burden of proving this allegation, and reaffirmed its denial of her motion. The defendant concedes that the court's resolution of this factual issue is afforded substantial deference; therefore, she does not challenge it. However, she maintains that she did not enter into a knowing plea because the trial court violated her due process rights under the State and Federal Constitutions in failing to advise her of the possibility of adverse immigration consequences. We first address the defendant's claim under the State Constitution, and rely on federal law only to aid in our analysis. *State v. Ball*, 124 N.H. 226, 231-33 (1983).

▮ Because a conviction results from a plea of *nolo contendere*, we find no reason here to distinguish a *nolo* plea from a plea of guilty. *See State v. LaRose*, 71 N.H. 435, 438 (1902) ("[A] plea of *nolo contendere* has the same legal effect as a plea of guilty."); 21 AM. JUR. 2D *Criminal Law* § 676 (2008) ("For practical purposes, a plea of nolo contendere is a plea of guilty, or the functional or substantive equivalent of such a plea." (footnote omitted)). Therefore, our jurisprudence regarding guilty pleas is applicable here.

▮ "A guilty plea must be knowing, intelligent, and voluntary to be valid." *State v. Dansereau*, 157 N.H. 596, 603 (2008) (quotation omitted). "Thus, a defendant must voluntarily waive his rights and fully understand the elements of the offense to which he is pleading, the direct consequences of the plea, and the rights he is forfeiting." *Id.* (quotation and brackets omitted). In a collateral attack of a guilty plea, the defendant bears the initial burden and must describe the specific manner in which the waiver was in fact involuntary or without understanding, and must at least go forward with evidence sufficient to indicate that his specific claim presents a genuine issue for adjudication. *State v. Offen*, 156 N.H. 435, 438 (2007). If the defendant meets his initial burden, and if the record indicates that the trial court affirmatively inquired into the knowledge and volition of the defendant's plea, then the defendant has the burden to demonstrate by clear and convincing evidence that the trial court was wrong and that his plea was either involuntary or unknowing for the reason he specifically claims. *Id.* On the other hand, if there is no record or an inadequate record of the trial court's inquiries into the defendant's volition and knowledge, the State has the burden to respond to the defendant's claim by demonstrating

to a clear and convincing degree that the plea was voluntary or knowing in the respect specifically challenged. *State v. Arsenault*, 153 N.H. 413, 416 (2006).

Here, the defendant carried her initial burden of describing the specific manner in which her plea was unknowing; she does not challenge the voluntariness of her plea. Because the district court acknowledged that it "did not advise the defendant of possible immigration consequences of [her] plea," *see id.*, the burden shifts to the State to demonstrate, to a clear and convincing degree, that the defendant's plea was knowing. *Offen*, 156 N.H. at 438. To support its contention that her plea was knowing, the State maintains that the trial court properly advised the defendant of the direct consequences of her plea. Moreover, the State contends that *Padilla* "cannot be read to create a new due process right by requiring a trial court to inform a defendant of the immigration consequences of her guilty plea."

We have consistently held that as a matter of constitutional due process, the defendant must be advised of the direct consequences of entering a guilty plea, but not the potential collateral consequences, in order for the guilty plea to be considered knowing. *State v. Fournier*, 118 N.H. 230, 231 (1978) (*per curiam*) ("[D]efendant need only be advised of the direct consequences of his guilty plea and not of consequences which are collateral."); *State v. Elliott*, 133 N.H. 190, 192 (1990); *Harper*, 126 N.H. at 821; *see Brady v. United States*, 397 U.S. 742, 755 (1970). In adopting this rule, we recognized that "consequences attendant to the commission of an offense are so numerous and logically unforeseeable, to require more would be an absurdity and would impose upon the trial court an impossible, unwarranted, and unnecessary burden." *Fournier*, 118 N.H. at 231. Although the district court concluded that "[p]ossible immigration consequence[s constitute] a collateral and not a direct consequence of a class A misdemeanor conviction," we have not previously opined on this particular issue.

Other jurisdictions have concluded that deportation is a collateral consequence of a guilty plea. *See, e.g., Smith v. State*, 697 S.E.2d 177, 182-84 (Ga. 2010); *People v. Gutierrez*, 954 N.E.2d 365, 381 (Ill. App. 2011), *appeal denied*, 962 N.E.2d 485 (Ill. 2011). Nevertheless, relying on *Padilla*, 130 S. Ct. at 1482, the defendant argues that "knowledge regarding deportation — or at least a warning that there may be such consequences — is necessary to a 'knowing' plea."

"Direct consequences may be described as those within the sentencing authority of the trial court, as opposed to the many other consequences to a defendant that may result from a criminal conviction." *Smith*, 697 S.E.2d at 181-82; *see United States v. Amador-Leal*, 276 F.3d 511, 514 (9th

Cir. 2002) ("The distinction between a direct and collateral consequence of a plea turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." (quotations omitted)). In contrast, collateral consequences "require[] application of a legal provision extraneous to the definition of the criminal offense and the provisions for sentencing those convicted under it." *Diamontopoulas v. State*, 140 N.H. 182, 186 (1995) (quotation omitted); *see also Elliott*, 133 N.H. at 192 (noting "habitual offender act is a classic example of a . . . collateral [consequence], in the sense that the consequence requires application of a legal provision extraneous to the definition of the criminal offense and the provisions for sentencing those convicted under it" (citation omitted)).

The defendant suggests that *"Padilla's* Sixth Amendment holding requiring 'advice regarding deportation' before a [guilty] plea" is accepted, is "transferrable to a similar Fourteenth Amendment requirement that a trial court provide a 'warning regarding deportation' to unrepresented defendants." (Brackets omitted). Thus, she contends, there is no need to classify immigration as either a direct or collateral consequence because, following *Padilla's* logic, "awareness of potential deportation proceedings is central to a knowing plea" under our constitution. We decline to accept the defendant's broad reading of *Padilla*.

In *Padilla*, the Supreme Court addressed "whether, as a matter of federal law, [the defendant's] counsel had an obligation to advise him that the offense to which he was pleading guilty would result in his removal." *Padilla*, 130 S. Ct. at 1478; *id.* at 1486 (holding "counsel must inform her client whether his plea carries a risk of deportation"). In addressing this issue, the Court explained that "[o]ur law has enmeshed criminal convictions and the penalty of deportation for nearly a century," and "recent changes in our immigration law have made removal nearly an automatic result for a broad class of noncitizen offenders." *Id.* at 1481. After acknowledging that it is " 'most difficult' to divorce the penalty from the conviction in the deportation context," and that the Court is "quite confident that noncitizen defendants facing a risk of deportation for a particular offense find it even more difficult," the Court stated that "[d]eportation as a consequence of a criminal conviction is, because of its close connection to the criminal process, uniquely difficult to classify as either a direct or a collateral consequence." *Id.* at 1481-82. Consequently, the Court concluded that whether counsel is constitutionally effective under the Sixth Amendment turns not on whether counsel advises the defendant of the direct and collateral consequences of a guilty plea, but rather whether

counsel's performance was " 'reasonable[] under prevailing professional norms.' " *Id.* at 1482 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).

██ Despite the defendant's efforts to link the ineffective assistance of counsel analysis relied on in *Padilla* and the due process analysis, the two differ markedly.

> Direct and collateral consequences relate to the trial court's duty to ensure that guilty pleas are knowingly and voluntarily entered as a matter of Fifth Amendment due process, while ineffective assistance of counsel relates to the defense lawyer's duty pursuant to the Sixth Amendment.
>
> . . . .
>
> . . . This approach clarifies that defense counsel may be ineffective in relation to a guilty plea due to professional duties for the representation of their individual clients that set a standard different — and higher — than those traditionally imposed on trial courts conducting plea hearings for defendants about whom the judges often know very little.

*Smith*, 697 S.E.2d at 183-84 (citations omitted). While *Padilla* recognized the importance of removal risks to non-citizen defendants, it "did *not* extend the direct consequences doctrine to that issue, or reject the basic distinction between direct and collateral consequences in determining whether a defendant's guilty plea was knowingly and voluntarily entered." *Id.* at 184; *see Arizona v. Salazar*, No. 2 CA-CR 2010-0296-PR, 2011 WL 285554, at *2 (Ariz. Ct. App. Jan. 19, 2011) ("Despite the Court's broad language about the perils of criminal convictions to non-citizen defendants, it did not ultimately resolve the disagreement over how to apply the direct/collateral consequences distinction." (quotations and brackets omitted)).

The Ninth Circuit's pre-*Padilla* analysis in *United States v. Amador-Leal* is instructive. In *Amador-Leal*, the defendant appealed his conviction and sentence following his guilty plea. *Amador-Leal*, 276 F.3d at 513. The defendant challenged whether *Fruchtman v. Kenton*, 531 F.2d 946 (9th Cir. 1976), which concluded that immigration consequences were collateral, was still good law. *Id.* at 513. He argued that since removal was "practically guaranteed under immigration laws enacted since *Fruchtman* was decided," immigration was no longer collateral. *Id.* at 514 (quotations omit-

ted). Accordingly, he argued that because the trial court failed to inform him of the possibility of removal, his plea did not comport with due process and was involuntary. *Id.*

In affirming his conviction, the Ninth Circuit followed *Fruchtman* and concluded that despite the recent developments in immigration laws, deportation remained a collateral consequence. *Id.* at 515-16. The court explained that "[t]he distinction between a direct and collateral consequence of a plea turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." *Id.* at 514 (quotation omitted). In addition, the court reasoned that "when, as in the case of deportation, the consequence in issue was not the sentence of the court which accepted the plea but of another agency over which the trial judge has no control and for which he has no responsibility, Rule 11 [of the Federal Rules of Criminal Procedure] imposes no duty on the District Court to advise a defendant of such consequences." *Id.* (quotations omitted).

In *United States v. Delgado-Ramos*, 635 F.3d 1237 (9th Cir. 2011) (*per curiam*), decided after *Padilla*, the Ninth Circuit again addressed the due process issue. In *Delgado-Ramos*, the defendant appealed his conviction after the district court failed to inform him of the immigration consequences of his plea during the plea colloquy. *Id.* at 1238. On appeal, the defendant argued that *Padilla* " 'casts doubt' on the continued force of *Amador-Leal*." *Id.* Holding that the district court need not advise defendants of potential immigration consequences, the court noted that "to hold that an intervening Supreme Court decision has 'effectively overruled' circuit precedent, the intervening decision must do more than simply 'cast doubt' on our precedent. Rather, it must undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Id.* at 1239 (quotations omitted). The court concluded that "[w]hile *Padilla*'s holding is directly applicable to [its] Sixth Amendment analysis . . . , it sheds no light on the obligations a district court may have under Rule 11 and due process." *Id.* at 1241. Thus, the court affirmed the defendant's conviction, concluding the district court did not err in failing to advise him of possible immigration consequences of his plea. *Id.*

■ ■ While we are mindful of the Supreme Court's observation in *Padilla* that "[d]eportation as a consequence of a criminal conviction is . . . uniquely difficult to classify as either a direct or collateral consequence," *Padilla*, 130 S. Ct. at 1482, we agree with the Ninth Circuit and conclude that *Padilla* does not speak to the due process obligations of a trial court accepting a guilty plea. Moreover, we join the other jurisdictions that have concluded that immigration consequences are collateral consequences of a

plea, and hold that our state's constitutional due process protections do not require trial courts to advise defendants of such potential consequences during plea colloquies. Accordingly, we conclude that the State has met its burden to demonstrate, to a clear and convincing degree, that the defendant's plea was knowing.

■ We note, however, that effective November 18, 2010, the standard acknowledgment and waiver of rights form now contains the following language:

> If I am not a citizen of the United States, I understand that conviction of the crime(s) for which I intend to plead GUILTY may have immigration consequences, including but not limited to, deportation from the United States, exclusion from admission into the United States, or denial of naturalization pursuant to the laws of the United States.

Although not required, we acknowledge trial courts' efforts to alert defendants to these potential consequences, "for there is no question that immigration consequences of a conviction are important to aliens contemplating a plea." *Amador-Leal*, 276 F.3d at 517. Nevertheless, because immigration consequences are collateral, the court's failure here to advise the defendant of them did not render her *nolo contendere* plea unknowing.

Because the State Constitution provides at least as much protection as the Federal Constitution under these circumstances, we reach the same result under the Federal Constitution as we do under the State Constitution. *See State v. Laforest*, 140 N.H. 286, 289 (1995); *Bordenkircher v. Hayes*, 434 U.S. 357 (1978); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969), *superseded by statute on other grounds as stated in United States v. Gomez-Cuevas*, 917 F.2d 1521 (10th Cir. 1990).

*Affirmed.*

DALIANIS, C.J., and HICKS and LYNN, JJ., concurred; DUGGAN, J., retired, specially assigned under RSA 490:3, concurred.