NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

————————————————

Merrimack
No. 2015-0609


ALBERTO RAMOS

v.

WARDEN, NEW HAMPSHIRE STATE PRISON

Argued: November 17, 2016
Opinion Issued: February 17, 2017


Thomas Barnard, senior assistant appellate defender, of Concord, on the brief and orally, for the petitioner.


Joseph A. Foster, attorney general (Sean R. Locke, assistant attorney general, on the brief and orally), for the State.


CONBOY, J. The petitioner, Alberto Ramos, appeals an order of the Superior Court (Delker, J.) dismissing his ineffective assistance of counsel (IAC) claim asserting that his trial counsel failed to inform him, prior to pleading guilty to felony charges, that he could be transferred to a prison in another state. We affirm.

The following facts are taken from the trial court's order or otherwise found in the record. In 1998, pursuant to a plea agreement, the petitioner pleaded guilty to second degree murder and attempted escape. Pursuant to the

agreement, he was sentenced to 28 years to life.  Some 15 years later, in April 2013, the petitioner was transferred from the New Hampshire State Prison to a Florida prison.  In June 2013, he filed a habeas corpus petition as a self-represented party.  After the appointment of counsel, the petitioner supplemented his habeas corpus petition with an IAC claim, alleging that he was "denied his right to the effective assistance of counsel" because his trial attorneys "failed to ensure that he made a knowing waiver of his rights" by not telling him when he pleaded guilty that he could be transferred to a prison outside of New Hampshire.  (Bolding and capitalization omitted.)  The State moved to dismiss the claim.

After a telephonic hearing, the trial court dismissed the petitioner's IAC claim, ruling that, because "the possibility of being sent out of state is a collateral consequence," and the "fail[ure] to inform a client of the collateral consequences of his conviction . . . does not constitute ineffective assistance of counsel," he could not "demonstrate [that] his trial attorneys were ineffective by failing to warn him that he could serve his time out of state." (Emphasis and capitalization omitted.)  This appeal followed.

"On an appeal from an order granting a motion to dismiss, we assume the truth of both the facts alleged in the [petitioner's] pleadings and all reasonable inferences therefrom as construed most favorably to the [petitioner]."  Cross v. Warden, N.H. State Prison, 138 N.H. 591, 593 (1994). "We need not, however, accept allegations . . . that are merely conclusions of law."  Suprenant v. Mulcrone, 163 N.H. 529, 530 (2012); see Cross, 138 N.H. at 593.  "We then engage in a threshold inquiry, testing the facts alleged in the pleadings against the applicable law."  Suprenant, 163 N.H. at 530-31.  "We will uphold the trial court's grant of a motion to dismiss if the facts pleaded do not constitute a basis for legal relief."  Id.

The petitioner's claim of ineffective assistance of counsel rests upon Part I, Article 15 of the State Constitution and the Sixth and Fourteenth Amendments to the Federal Constitution.  We first address the petitioner's claim under the State Constitution and rely upon federal law only to aid our analysis.  State v. Ball, 124 N.H. 226, 231-33 (1983).

Our State and Federal Constitutions guarantee a criminal defendant reasonably competent assistance of counsel.  State v. Sharkey, 155 N.H. 638, 640 (2007); see U.S. CONST. amends. VI and XIV; N.H. CONST. pt. I, art. 15. Generally, to resolve an IAC claim, we apply the two-pronged Strickland test, which requires a criminal defendant to demonstrate that his or her defense counsel provided constitutionally deficient performance that resulted in prejudice.  State v. Whittaker, 158 N.H. 762, 768 (2009); see Strickland v. Washington, 466 U.S. 668, 687 (1984).  However, when the alleged deficient performance is defense counsel's failure to inform a client of a particular consequence of a guilty plea, we first determine whether Strickland applies at

2

all.  See Wellington v. Comm'r, Dept. of Corrections, 140 N.H. 399, 400-02 (1995).  To do so, we examine whether the particular consequence was direct or collateral to the plea.  See id.  If collateral, the Strickland test does not apply.  See id. at 402.  If direct, the protections against IAC are triggered and we undertake a Strickland analysis.  Cf. id. at 402 (holding that the Strickland test does not apply to IAC claims involving collateral consequences).

The petitioner argues that this framework contravenes the United States Supreme Court's decision in Padilla v. Kentucky, 559 U.S. 356, 364-66 (2010), and our decision in State v. Ortiz, 163 N.H. 506, 512-14 (2012).  According to the petitioner, Padilla and Ortiz render the distinction between direct and collateral consequences immaterial to an IAC claim.  He contends that the distinction applies only in the context of determining whether a trial court has violated a criminal defendant's due process rights by accepting his or her guilty plea without advising a defendant of the potential consequences.  Consequently, he argues that his IAC claim concerning his trial counsel's failure to inform him of a collateral consequence should be evaluated under the Strickland test.

For the purposes of this appeal, we assume without deciding that we would adopt Padilla in construing the State Constitution and that we would apply it retroactively to the petitioner's IAC claim.  But see Chaidez v. United States, 133 S. Ct. 1103, 1107-11 (2013) (holding that Padilla applies only prospectively under the Federal Constitution).  Nevertheless, we disagree with the petitioner's assertion that Padilla is controlling here.

In Padilla, the Supreme Court neither mandated nor rejected the "distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' required under Strickland."  Padilla, 559 U.S at 365.  To the contrary, the Court established that deportation is a singular exception to the direct/collateral consequences model because deportation is "uniquely difficult to classify as either."  Id. at 366.  Thus, in Padilla, the Supreme Court held that an attorney's failure to warn a client that a guilty plea would result in deportation could constitute IAC and that such a claim should be evaluated under the Strickland test.  Id. at 365-66.  In Chaidez, the Court explained that "in Padilla [it] did not eschew the direct-collateral divide across the board," but rather "relied on the special 'nature of deportation' . . . to show that '[t]he collateral versus direct distinction [was] ill-suited'" to dispose of the claim in Padilla.  Chaidez, 133 S. Ct. at 1112.

Our decision in Ortiz did not involve an IAC claim.  Ortiz, 163 N.H. at 507.  Rather, it concerned a due process challenge to a trial court's plea colloquy.  Id.  In that case, we held that "our state's constitutional due process protections do not require trial courts to advise defendants of . . . potential [immigration] consequences during plea colloquies."  Id. at 514.  In doing so, we noted in dicta that "defense counsel may be ineffective in relation to a guilty

3

plea due to professional duties for the representation of their individual clients that set a standard different — and higher — than those traditionally imposed on trial courts conducting plea hearings for defendants." Id. at 512 (quotation omitted). Furthermore, we noted that the IAC analysis and the due process analysis "differ markedly." Id.

The petitioner here argues that this dicta "implicitly overruled" our prior cases establishing the inapplicability of the Strickland test to IAC claims based upon failure of counsel to advise of collateral consequences. See Wellington, 140 N.H. at 402. However, our statements in Ortiz were made in response to the petitioner's argument, based upon the holding in Padilla, that deportation should not be subject to the direct/collateral consequences model in the context of a due process challenge alleging error by the trial court. Ortiz, 163 N.H. at 511. We neither explicitly nor implicitly overruled our prior decisions regarding the standard applicable to alleged errors by trial counsel. See id. at 511-12; see also Wellington, 140 N.H. at 401-02.

Alternatively, the petitioner argues that, although some collateral consequences may "be categorically excluded from the range of matters about which a lawyer must provide advice," interstate prison transfer, like deportation, is not among them. He asserts that interstate prison transfer is, like deportation, a "particularly severe penalty" that is "intimately related to the criminal process," and "most difficult to divorce" from the underlying conviction. Padilla, 559 U.S. at 365, 366 (quotation omitted). He argues that interstate prison transfer constitutes a "severe penalty" because of the "impact" that such transfers have upon inmates' families living near the prison in the "sending state." (Quotation omitted.)

Interstate prison transfer is qualitatively different from deportation; deportation affects a protected liberty interest, whereas interstate prison transfer does not. See Flores-Chavez v. Ashcroft, 362 F.3d 1150, 1161 (9th Cir. 2004) (holding that "an [a]lien facing deportation confronts the loss of a significant liberty interest"); Mejia Rodriguez v. Reno, 178 F.3d 1139, 1146 (11th Cir. 1999); cf. Olim v. Wakinekona, 461 U.S. 238, 248 (1983) (explaining that interstate prison transfer "does not deprive an inmate of any liberty interest protected by the Due Process Clause"). Moreover, interstate prison transfer is not "intimately related to the criminal process"; it may or may not occur, whereas deportation is "nearly an automatic result" of many convictions. Padilla, 559 U.S. at 365, 366. Thus, we are not persuaded by the petitioner's attempt to liken interstate prison transfer to deportation.

We hold that, as a matter of law, interstate prison transfer is a collateral consequence of a guilty plea. Accordingly, we conclude that, even if the petitioner showed that his trial counsel failed to advise him of the potential for interstate prison transfer, such failure would not constitute constitutionally infirm assistance. Because the Federal Constitution offers the petitioner no

greater protection than does the State Constitution under these circumstances, we necessarily reach the same result under the Federal Constitution as we do under the State Constitution.  See Wellington, 140 N.H. at 400.

Affirmed.

DALIANIS, C.J., and BASSETT, J., concurred.