

# NUMBER 13-21-00269-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## EX PARTE LUIS ALBERTO MARTINEZ

**On appeal from the 389th District Court
of Hidalgo County, Texas.**

## MEMORANDUM OPINION

**Before Justices Tijerina, Silva, and Peña
Memorandum Opinion by Justice Peña**

Appellant Luis Alberto Martinez appeals from the denial of his application for a post-conviction writ of habeas corpus. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072. In five issues, which we treat as two, Martinez argues that the habeas court erred in denying relief because: (1) his trial counsel was ineffective for failing to advise him that pleading guilty to health care fraud would subject him to denaturalization; and (2) his guilty plea was not knowing, intelligent, or voluntary. We affirm.

## I.    BACKGROUND

Martinez was born in Mexico. He later immigrated to the United States, and he became a lawful permanent resident in 2001. Martinez became a naturalized citizen in 2011. As part of his citizenship application, Martinez avowed that he had not committed a crime or offense for which he had not been arrested in the five years prior to the submission of his application.

## A.    Guilty Plea

On June 12, 2013, a grand jury indicted Martinez for health care fraud and theft for participating in a scheme to obtain unauthorized Medicaid payments in the amount of $20,000 or more but less than $100,000, both third-degree felonies. *See* TEX. PENAL CODE ANN. §§ 31.03(e)(5), 35A.02(5).[1] The indictment alleged that Martinez committed the acts from 2007 through 2011. On July 22, 2013, pursuant to a plea agreement, Martinez pleaded guilty to health care fraud in exchange for the State's dismissal of the theft charge. Martinez signed the following plea admonishment:

> If you are not a citizen of the United States of America, a plea of guilty or no contest may, and under current Federal immigration rules is almost certain to, result in your deportation, the exclusion from admission to this country, or the denial of naturalization under federal law, and I, the Defendant, have been so advised by my attorney.

At the plea hearing, the trial court asked Martinez if he was a United States citizen, and he replied that he was. It then admonished appellant, "If you're not a U.S. Citizen, a plea of guilty or nolo contendere may result in deportation, exclusion from admission into this

---

[1] Both statutes have since been amended to require the value of the stolen property to be $30,000 or more but less than $150,000 to constitute a third-degree felony. Act of May 31, 2015, 84th Leg., R.S., ch. 1251, §§ 10, 27, 2015 Tex. Sess. Law Serv. 4208, 4212 (West) (codified at TEX. PENAL CODE ANN. §§ 31.03, 35A.02(5)). We cite to the version of the statutes in place at the time of Martinez's conviction.

country, or denial of naturalization under federal law." Martinez replied that he understood. The trial court accepted Martinez's guilty plea and placed Martinez on deferred adjudication community supervision for two years. Martinez successfully completed his period of community supervision, and the trial court later dismissed the case.

## B.    Habeas Application

On July 24, 2020, Martinez filed a petition for writ of habeas corpus, seeking to withdraw his guilty plea. Martinez contended that his guilty plea was not knowing and voluntary and that he received ineffective assistance of counsel. He maintained that his counsel failed to advise him of the immigration consequences of his guilty plea—specifically, that he might face denaturalization. As a result, he "was unaware during his criminal proceeding that pleading guilty would affect his United States citizenship." Martinez claimed that the United States was seeking to revoke his naturalization, relying on his 2013 guilty plea.

Martinez attached the following evidence to his petition: (1) an October 2, 2019 complaint seeking to revoke naturalization; (2) Martinez's declaration; (3) court records from his plea proceeding; and (4) an investigative report from the Medicaid Fraud Control Unit of the Office of the Texas Attorney General (MFCU).

According to his declaration, Martinez moved to the United States when he was fifteen years old and graduated from McAllen High School in 2002. He is married with two children. Martinez became a citizen in 2011. He did not know that pleading guilty in 2013 would subject him to denaturalization proceedings. Martinez informed his counsel that he

3

was a naturalized citizen, but counsel did not advise him that his citizenship would be placed at risk by pleading guilty. If Martinez knew he could be denaturalized, he would not have pleaded guilty, but he would have "fought [his] case instead." Martinez claimed he would have asked his counsel for a better plea deal, and if that was not possible, he would have insisted on going to trial.

The complaint to revoke naturalization alleged that Martinez "procured his naturalization unlawfully and that he willfully misrepresented and concealed material facts in applying to naturalize." The United States further contended that Martinez "engaged in criminal activity that he concealed throughout the naturalization process and that made him ineligible for U.S. citizenship." Specifically, the complaint alleged that Martinez answered "no" to the following question: "Have you **ever** committed a crime or offense for which you were **not** arrested?" The complaint stated that Martinez "pled guilty to [health care fraud] and stipulated to evidence establishing his conduct that constituted the elements of this crime starting on or about September 17, 2007." It alleged that Martinez was statutorily precluded from establishing that he was a person of good moral character because he committed a crime involving moral turpitude in the five years preceding his application. The complaint further alleged that Martinez gave false testimony in his citizenship application by denying that he had committed a crime for which he had not been arrested. The United States sought a judgment revoking and setting aside the order admitting Martinez to citizenship.

The MFCU report stated that Martinez told investigators that he was employed by Valley Medical Depot as a delivery driver since September 2007. Martinez reported that,

4

in 2007 and 2008, when he delivered supplies to clients, he would not adjust the quantity of items delivered on the invoice when there was a discrepancy between the amount the client was receiving. In 2008, an office manager informed him "that he needed to adjust the amount on the invoice to match the amount the client received." Martinez maintained that he would often forget to make the adjustment if there was a discrepancy. He estimated that he failed to adjust approximately ten percent of the invoices that were incorrect and that for these orders only seventy percent of the reflected items were delivered. The report confirmed that Valley Medical Depot significantly overbilled Medicaid from September 2007 through MFCU's investigation in 2011.

## C. Hearing & Ruling

At the habeas hearing, Martinez testified that he has been in the country for twenty-four years. He stated that he is currently employed as a "[h]elper, electrician." Martinez informed his criminal defense counsel for his 2013 criminal charges that he was a naturalized citizen. Martinez maintained that his counsel did not inform him that he might be denaturalized or suffer any immigration consequences as a result of pleading guilty. Martinez believed he would face immigration consequences only if he was a non-citizen at the time of his plea. Martinez stated that if he knew he could lose his citizenship, he would not have pleaded guilty. Upon questioning from the habeas court, Martinez acknowledged that he was aware of the 2007 offense date alleged in the indictment and that he was not a citizen at this time.

The habeas court signed an order denying Martinez's application for habeas relief,

supported by the following pertinent findings of fact and conclusions of law:[2]

## **FINDINGS OF FACT**

[1].    On June 29, 2021, this Court conducted a hearing on [Martinez's] writ application. Prior to this hearing, the Court reviewed the transcript of [Martinez's] 2013 plea proceeding. The Court takes judicial notice that the transcript revealed that [Martinez] was orally admonished by the Court of the fact that a guilty plea may result in adverse immigration consequences as required by [Texas Code of Criminal Procedure article] 26.13(a)(4).

    a.    The Court heard testimony from [Martinez], who acknowledged that he was a non-citizen in 2007; that he was aware of the 2007 offense date alleged in the indictment; that he was a citizen at the time of his guilty plea; and that he was admonished of possible adverse immigration consequences by the Court prior to his guilty plea. The Court finds the above testimony credible.

    b.    [Martinez] testified that his trial attorney did not provide him immigration warnings, specifically de-naturalization. This Court finds that [Martinez] provided his signature on the 'Citizenship' admonishment section of the Plea Admonishment paperwork, where [Martinez] acknowledged he had been warned by his trial attorney of possible adverse immigration consequences.

    c.    [Martinez] testified that had he been warned of immigration consequences by his trial attorney, specifically de-naturalization, he would have rejected the State's plea offer and gone to trial. This Court finds that [Martinez's] testimony confirms the following: 1) [Martinez] provided his signature on the 'Citizenship' admonishment section of the Plea Admonishment paperwork, where [Martinez] acknowledged he had been warned by his trial attorney of possible adverse immigration consequences as a result of his plea of guilt; 2) this Court orally admonished [Martinez] regarding possible adverse immigration consequences due to his plea of guilt; 3) [Martinez] testified at the habeas hearing that he was aware this Court had provided said admonishments to him prior to his guilty plea; and 4) [Martinez] was aware that the

---

[2] We have renumbered the findings of fact and conclusions of law for readability.

indictment alleged an offense date of September 17, 2007[,] an offense date in which [Martinez] knew he was not a U.S. Citizen.

## CONCLUSIONS OF LAW

[1].    The Supreme Court held in Padilla v. Kentucky that defense attorneys must advise non-citizen clients about the deportation risks of a guilty plea. Padilla v. Kentucky, 559 U.S. 356, 366–68 (2010).

[2].    Because [Martinez] was a citizen at the time of his guilty plea, [Martinez's] trial attorney was under no duty under Padilla to provide any warnings regarding immigration consequences whatsoever[.] There is no case law explicitly extending Padilla's duty-to-warn-of-immigration-consequences to naturalized citizens. The Court further acknowledges that there is no allegation or proof in the record demonstrating that [Martinez] was provided *affirmative misadvice*.

[3].    Nothing in the record suggests that [Martinez's] trial attorney was aware or should have been aware of the facts giving rise to [Martinez's] de-naturalization exposure. As a U.S. citizen, [Martinez] is not subject to *automatic deportation* or even the remote *possibility of deportation* as a direct result of his guilty plea. Because [Martinez's] trial attorney had no basis for suspecting that [Martinez's] guilty plea could have immigration consequences, it was not objectively unreasonable for [Martinez's] trial attorney to provide no advice regarding [Martinez's] de-naturalization exposure. [Martinez's] current de-naturalization proceedings in U.S. District Court stem from [his] own misrepresentations and concealment of his criminal conduct throughout his naturalization application process, and not his plea of guilty[.]

[4].    Even assuming that Padilla's duty-to-warn-of-immigration-consequences applies to the instant case, . . . [t]he record shows that [Martinez] was admonished of possible adverse immigration consequences as a result of his guilty plea by his trial attorney and this Court. . . . Here, the outcome of [Martinez's] de-naturalization proceedings is not truly clear. . . . Furthermore, said misrepresentations and concealment occurred during [Martinez's] 2011 naturalization application process, before [Martinez] was indicted for [a] criminal offense . . . and his plea of guilty[.] In addition, [Martinez's] de-naturalization proceedings involve a third party lawsuit that was filed in the *discretion* of the U.S., and was thus not an *automatic* consequence of [Martinez's] guilty plea. It is also

merely speculative whether the U.S. will successfully prove up their allegations against [Martinez] in federal district court. Because it was uncertain whether the U.S. would file its discretionary third party lawsuit as a result of [Martinez's] guilty plea, and because the outcome of said de-naturalization proceedings is not 'truly clear', [Martinez's] trial attorney need no more than have advised [Martinez] that his pending criminal charges may carry a risk of adverse immigration consequences. *See id.* The record reflects that [Martinez] was admonished by his trial attorney and this Court that his plea of guilty in this case could result in adverse immigration consequences. [Martinez] has failed to prove that he suffered ineffective assistance of counsel pursuant to the requirements of Padilla and Strickland[ v. Washington, 466 U.S. 668 (1984)].

[5].     [Martinez] has failed to meet his burden to allege and prove facts which, if true, entitle him to relief. *See* Ex [p]arte Maldonado, 688 S.W.2d [114, 116 (Tex. Crim. App. 1985)].

This appeal followed.

## II.     STANDARD OF REVIEW

Article 11.072 of the Texas Code of Criminal Procedure allows a defendant who is seeking relief from a judgment ordering community supervision to file an application for post-conviction writ of habeas corpus. TEX. CODE CRIM PROC. ANN. art. 11.072, § 1; *Ex parte Torres*, 483 S.W.3d 35, 42 (Tex. Crim. App. 2016). Under Article 11.072, the applicant "bears the burden of proving, by a preponderance of the evidence, the facts that would entitle him to relief." *Ex parte Lalonde*, 570 S.W.3d 716, 725 (Tex. Crim. App. 2019) (citing *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002)). In reviewing a habeas court's decision on an application for relief, we view the facts in the light most favorable to its ruling. *See Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006); *see also Ex parte Galvan-Herrera*, No. 13-11-00380-CR, 2012 WL 1484097, at *3 (Tex. App.—Corpus Christi–Edinburg Apr. 26, 2012, pet. ref'd) (mem. op., not designated

8

for publication). We afford almost total deference to a habeas court's findings of fact when they are supported by the record, especially when those findings are based upon credibility and demeanor. *See State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013); *Ex parte Garcia*, 353 S.W.3d 785, 788 (Tex. Crim. App. 2011).

Generally, we review a habeas court's decision to grant or deny relief for an abuse of discretion. *Ex parte Estrada*, 573 S.W.3d 884, 890 (Tex. App.—Houston [1st Dist.] 2019, no pet.). However, if the resolution of the ultimate question turns on an application of legal standards, we review the determination de novo. *Id.*

### III.   INEFFECTIVE ASSISTANCE OF COUNSEL

In his first issue, Martinez argues that the habeas court erred in denying his ineffective assistance of counsel claim because his attorney failed to advise him of possible immigration consequences, specifically denaturalization, that may result from his guilty plea.

### A.   Applicable Law

The Sixth Amendment to the U.S. Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. "The Sixth Amendment guarantees a defendant the effective assistance of counsel at critical stages of a criminal proceeding, including when he enters a guilty plea." *Ex parte Duque*, 540 S.W.3d 136, 145 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (internal quotations omitted). "[A] person claiming ineffective assistance of counsel must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Ex parte Covarrubias*, 665 S.W.3d 605,

9

609 (Tex. Crim. App. 2023) (citing *Strickland*, 466 U.S. at 687).

Counsel's actions are deficient if they fall below an objective standard of reasonableness under prevailing professional norms at the time of the representation. *Ex parte Garza,* 620 S.W.3d 801, 808 (Tex. Crim. App. 2021). "It is presumed that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Ex parte Salinas*, 664 S.W.3d 894, 909 (Tex. Crim. App. 2022) (citing *Strickland*, 466 U.S. at 690). We must evaluate counsel's performance at the time of their representation and not through "the distorting effects of hindsight." *Id.* (quoting *Strickland*, 466 U.S. at 689–90). Appellate courts "do not ordinarily declare counsel to have performed deficiently for failing to invoke unsettled legal principles." *Id*. (collecting cases). "To base an ineffective assistance of counsel claim on law that is unsettled as of the time of the attorney's performance would indulge in the kind of retrospective evaluation that *Strickland* forbids." *Id*. (citing *Vaughn v. State*, 931 S.W.2d 564, 567 (Tex. Crim. App. 1996)). "Because the law is not an exact science and it may shift over time, the rule that an attorney is not liable for an error in judgment on an unsettled proposition of law is universally recognized[.]" *Ex parte Chandler*, 182 S.W.3d 350, 358 (Tex. Crim. App. 2005) (internal quotations omitted).

With respect to plea negotiations, counsel is required to advise a noncitizen client about the potential deportation consequences of pleading guilty to a particular offense. *Padilla*, 559 U.S. at 366–67; *see State v. Garcia*, 651 S.W.3d 506, 513 (Tex. App.—Houston [14th Dist.] 2022, pet. ref'd). "When the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that

10

pending criminal charges may carry a risk of adverse immigration consequences." *Padilla*, 559 U.S. at 369. "But when the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear." *Id.* The Texas Court of Criminal Appeals has stated that counsel's duty under *Padilla* extends to advising noncitizens that their guilty plea will cause them to "automatically lose legal immigration status and become removable." *Ex parte Aguilar*, 537 S.W.3d 122, 129 (Tex. Crim. App. 2017).

Normally to show prejudice due to ineffective assistance of counsel, a defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Compton v. State*, 666 S.W.3d 685, 715 (Tex. Crim. App. 2023). However, when a guilty plea is at issue, a defendant meets the prejudice prong by showing a reasonable probability that, but for counsel's deficient performance, the applicant would have "insisted on going to trial" rather than pleading guilty. *Lee v. United States*, 582 U.S 357, 364–65 (2017); *Ex parte Torres*, 483 S.W.3d 35, 47 (Tex. Crim. App. 2016); *see also Ex parte Gallegos*, No. 13-20-00320-CR, 2022 WL 17260517, at *7 (Tex. App.—Corpus Christi–Edinburg Nov. 29, 2022, pet. filed) (mem. op., not designated for publication). In evaluating the evidence of appellant's decision-making regarding his plea, "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee*, 582 U.S. at 369. Reviewing courts must "look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id*.

B.    **Deficient Performance**

Martinez first argues that *Padilla's* requirement that counsel must advise his

11

noncitizen client of possible immigration consequences of a guilty plea extends to citizens who face the possibility of denaturalization. Martinez further maintains that denaturalization was a clear consequence of his guilty plea and that his counsel should have advised him accordingly. Finally, Martinez argues that the admonishment he received from his attorney and the trial court did not notify him that he may be subject to adverse immigration consequences because it was directed at noncitizens only.

We first note that *Padilla* limits its discussion to a criminal defense counsel's duty to advise a *noncitizen* of the immigration consequences of a plea, with an emphasis on *deportation*. *See* 559 U.S. at 364 ("The importance of accurate legal advice for noncitizens accused of crimes has never been more important. . . . [D]eportation is an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes." (internal citations omitted)). Neither factor is present in this case. Martinez is a naturalized citizen, and he makes no contention that his guilty plea subjects him to the possibility of deportation or the loss of legal immigration status such that he would be subject to removal proceedings. *See id.* at 365, 368 (observing that "deportation is . . . intimately related to the criminal process" and "preserving the client's right to remain in the United States may be more important to the client than any potential jail sentence" (cleaned up)); *see also Ex parte Aguilar*, 537 S.W.3d at 129 (holding that, under *Padilla*, counsel has a duty to admonish a noncitizen that his guilty plea will result in the loss of legal immigration status). However, citizenship has long been recognized as a valuable right:

> [Losing one's citizenship] is more serious than a taking of one's property, or
> the imposition of a fine or other penalty. For it is safe to assert that nowhere

12

in the world today is the right of citizenship of greater worth to an individual than it is in this country. It would be difficult to exaggerate its value and importance.

*Schneiderman v. United States*, 320 U.S. 118, 122 (1943).

We acknowledge that the risk of denaturalization, like deportation, may be an important part of a defendant's decision to plead guilty. However, we are unable to conclude that counsel was ineffective in this case for failing to advise Martinez of that risk. First, whether counsel has such a duty is far from settled law. We have previously recognized that "no Texas case has applied *Padilla* to naturalized citizens." *Ex parte Gallegos*, 2022 WL 17260517, at *7. [3] To complicate matters, a survey of other jurisdictions reveals no decisions imposing a duty on counsel to affirmatively advise a naturalized citizen of possible denaturalization consequences of a plea. Some courts have explicitly declined to do so. *See United States v. Vongphakdy*, No. 3:21-CR-00184-KDB-DSC, 2022 WL 1282554, at *4 (W.D.N.C. Apr. 28, 2022) (concluding that "counsel's representation did not fall below an objective standard of reasonableness when he failed to inform his client, who was a naturalized citizen, that his guilty pleas could potentially create a risk of denaturalization"); *Pizzuti v. United States*, No. 01-CR-1122 (LAP), 2019 WL 274968, at *3 (S.D.N.Y. Jan. 10, 2019) (concluding that *Padilla* does not apply where the defendant is a naturalized citizen and his conviction does not render him deportable). While another court has narrowly concluded that counsel is not ineffective when he advised his client that denaturalization was "possible" as opposed to certain. *See United*

---

[3] In that case, we concluded that Gallegos could not show that he was prejudiced by his counsel's alleged ineffectiveness. *Ex parte Gallegos*, No. 13-20-00320-CR, 2022 WL 17260517, at *9–10 (Tex. App.—Corpus Christi–Edinburg Nov. 29, 2022, pet. filed) (mem. op., not designated for publication). Therefore, we did not address *Strickland*'s first prong. *Id.*

13

*States v. Almonte*, 830 Fed. Appx. 620, 624 (11th Cir. 2020). Yet another jurisdiction has decided the issue on the prejudice component of *Strickland*, reasoning that denaturalization proceedings could have proceeded even if a guilty plea were set aside or no criminal charges were ever brought. *See United States v. Singh*, No. 13-20551, 2022 WL 2209369, at *9 (E.D. Mich. June 19, 2022). No jurisdiction has explicitly concluded that counsel was ineffective for giving no advice regarding denaturalization.

Martinez's cited authority is inapposite. In *Chima v. United States*, a magistrate judge concluded that counsel rendered deficient performance for affirmatively misadvising a naturalized citizen that he would not be subject to removal as a result of his guilty plea. No. 3:17-CV-2987-D-BT, 2019 WL 2304072, at *2 (N.D. Tex. Apr. 15, 2019), *report and recommendation adopted*, No. 3:17-CV-2987-D, 2019 WL 2297561 (N.D. Tex. May 30, 2019); *see also Rodriguez v. United States*, 730 Fed. Appx. 39, 42 (2d Cir. 2018) (concluding that counsel was deficient for misadvising naturalized citizen client that "she did not have to worry about the immigration consequences of a plea"). Martinez makes no allegation that his counsel misadvised him regarding the consequences of his plea.[4]  *See Ex parte Garcia*, 547 S.W.3d 228, 230 (Tex. Crim. App. 2018) (recognizing that an affirmative-misadvice claim is distinct from the failure to advise

---

[4] The applicant for postconviction relief in *Padilla* prevailed on the basis that his counsel affirmatively misadvised him regarding the consequences of his guilty plea. *See Padilla v. Kentucky*, 559 U.S. 356, 359 (2010). Affirmative misadvice claims concerning the consequences of a guilty plea have long been recognized under the law. *Ex parte Osvaldo*, 534 S.W.3d 607, 622 (Tex. App.—Corpus Christi–Edinburg 2017), *aff'd sub nom. Ex parte Garcia*, 547 S.W.3d 228 (Tex. Crim. App. 2018) ("*Padilla's* rule . . . encompassed a well-recognized standard—an effective counsel may not affirmatively misadvise a client."). However, *Padilla* went on to announce a new rule—counsel's *failure* to advise a non-citizen of possible immigration consequences of his guilty plea constituted ineffective assistance of counsel. *See Ex parte Garcia*, 547 S.W.3d 228, 230 (Tex. Crim. App. 2018).

rule announced in *Padilla*).

Martinez also cites *U.S. v. Kayode*, where the court found that Kayode submitted "a genuine issue of material fact as to whether his counsel's assistance was constitutionally deficient[.]" 777 F.3d 719, 723–24 (5th Cir. 2014). Kayode, a naturalized citizen, pleaded guilty to mail fraud, aggravated identity theft, and the unlawful procurement of naturalization. *Id.* at 720. Kayode argued only that he received ineffective assistance of counsel because his attorneys failed to advise him of the deportation consequences of his plea. *Id.* at 722. Thus, the court did not address whether Kayode's counsel had a duty to warn Kayode of the risks of denaturalization. *Id.* at 723–24. Unlike the circumstances in *Kayode*, Martinez does not present evidence, nor does he allege, that he faces the risk of deportation due to his guilty plea, and he does not challenge the trial court's findings to the contrary.

Faced with this unsettled legal landscape, we conclude that it was not unreasonable for Martinez's counsel to have provided no advice as to whether Martinez faced immigration consequences, specifically denaturalization, as a result of his guilty plea.[5] *See Ex parte Bahena*, 195 S.W.3d 704, 707 (Tex. Crim. App. 2006) ("It is necessary to decide only that it would not have been unreasonable for applicant's trial and appellate counsel to have believed that applicant's sentences could have been stacked based on law that was unsettled at the time and is unsettled to this day."). Stated

---

[5] Were we to decide that counsel has a duty to advise citizen clients of the risk of denaturalization, we would seemingly be announcing a new rule of criminal procedure that would not apply retroactively. *See Chaidez v. United States*, 568 U.S. 342, 344 (2013) (concluding that *Padilla* announced a new rule of criminal procedure such that a defendant whose conviction became final before *Padilla* was decided could not benefit from its holding); *Teague v. Lane*, 489 U.S. 288, 306 (1989) (holding that new constitutional rules of criminal procedure will not apply retroactively to cases on collateral review).

another way, counsel's actions did not fall below an objective standard of reasonableness under prevailing professional norms at the time of the representation. *See Ex parte Garza*, 620 S.W.3d at 808. Were we to conclude otherwise, we would be evaluating counsel's performance through the distorting effects of hindsight. *See Strickland*, 466 U.S. at 690; *Ex parte Salinas*, 664 S.W.3d at 909.

Second, we note that there is no evidence that Martinez provided sufficient information to his counsel such that he would be aware of a possible denaturalization risk. Specifically, there is no evidence Martinez informed his counsel when he became a naturalized citizen. As Martinez notes on appeal, his guilty plea renders him subject to denaturalization only if the plea relates to conduct occurring within the residency period of five years preceding his naturalization. *See* 8 U.S.C. § 1427(a)(3). Thus, had Martinez become a naturalized citizen before September 2007, when the criminal activity was alleged to have commenced, his plea would not expose him to potential denaturalization proceedings. For that reason, Martinez has failed to show that he provided sufficient information such that counsel could have advised him in this regard. *See Strickland*, 466 U.S. at 691 ("Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant."); *see also United States v. Farhane*, No. 05 CR. 673-4 (LAP), 2020 WL 1527768, at *2 (S.D.N.Y. Mar. 31, 2020) (concluding that counsel was not ineffective for giving no advice regarding the possibility of denaturalization where "nothing in the record suggests his lawyer knew, or should have known, about the circumstances giving rise to [the defendant's] denaturalization exposure").

16

For the foregoing reasons, we conclude that Martinez has not shown that his counsel's performance fell below the objective standard of reasonableness. *See Ex parte Garza*, 620 S.W.3d at 808; *Ex parte Lalonde*, 570 S.W.3d at 725. Therefore, the habeas court did not err in denying relief on this basis. *See Ex parte Estrada*, 573 S.W.3d at 890. We overrule Martinez's first issue.

## IV. KNOWING, INTELLIGENT, AND VOLUNTARY PLEA

In his second issue, Martinez argues that his guilty plea was not knowingly, intelligently, and voluntarily entered because the trial court did not properly advise him of the immigration consequences of his plea in violation of his due process rights.[6]

### A. Applicable Law

The Fifth Amendment to the United States Constitution provides that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. This due process protection requires that "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Davison v. State*, 405 S.W.3d 682, 686 (Tex. Crim. App. 2013) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). "A criminal defendant who enters a plea of guilty has by definition

---

[6] Martinez argues for the first time in his reply brief that we must remand the case to the habeas court because it erred in not issuing findings and conclusions that are specific to his due process claim. "An issue raised for the first time in a reply brief is ordinarily waived and need not be considered by this Court." *City of Donna v. Ramirez*, 548 S.W.3d 26, 34 (Tex. App.—Corpus Christi–Edinburg 2017, pet. denied) (quoting *McAlester Fuel Co. v. Smith Int'l, Inc.*, 257 S.W.3d 732, 737 (Tex. App.—Houston [1st Dist.] 2007, pet. denied)). Even if we were to consider this argument, we would conclude it is without merit. The habeas court's findings and conclusions, especially as they pertain to whether Martinez was properly admonished by the trial court, sufficiently address Martinez's claim that his plea was unknowing and involuntary. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072, § 7(a) (requiring a habeas court to enter a written order including findings of fact and conclusions of law if the court determines that the application is not frivolous).

17

relinquished his Sixth Amendment rights to a trial by jury and to confront the witnesses against him, as well as his Fifth Amendment privilege against self-incrimination." *Id.* (citing *McCarthy v. United States*, 394 U.S. 459, 466 (1969)). "For a guilty plea to be a voluntary and intelligent choice, the defendant must be aware of the plea's direct consequences that are punitive in nature." *Stubbs v. State*, 533 S.W.3d 557, 567 (Tex. App.—Corpus Christi–Edinburg 2017, pet. ref'd) (citing *Anderson v. State*, 182 S.W.3d 914, 917–18 (Tex. Crim. App. 2006) (en banc)). When a trial court advises a defendant "of the direct, punitive consequences of his plea, his ignorance of a collateral or remedial consequence does not render the plea involuntary." *Id.* (citing *Mitschke v. State*, 129 S.W.3d 130, 135 (Tex. Crim. App. 2004)).

"A Texas court, however, must do more than is required to meet the minimum standards of due process of law when a defendant pleads guilty in a felony case." *Anderson*, 182 S.W.3d at 918. It must also admonish a defendant of certain consequences as provided by statute. *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 26.13). As relevant here, the trial court must admonish the defendant of "the fact that if the defendant is not a citizen of the United States of America, a plea of guilty or nolo contendere for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law[.]" *Id*. art. 26.13(a)(4). "When the record shows that the defendant received statutory admonishments, . . . there is a prima facie showing that the defendant knowingly and voluntarily pleaded guilty." *Thomas v. State*, 615 S.W.3d 552, 568–69 (Tex. App.—Houston [1st Dist.] 2020, no pet.); *see Carranza v. State*, 980 S.W.2d 653, 656 (Tex.

18

Crim. App. 1998) ("[A]lthough the admonishment itself is not constitutionally required, it aids the trial court in making the determination that the relinquishment of rights, constitutional or otherwise, by the defendant is both knowing and voluntary.").

**B.    Analysis**

Here, the trial court provided Martinez with each required statutory admonishment, including the admonishment pertaining to immigration consequences faced by noncitizens. Therefore, we must presume that his plea was knowing and voluntary. *See Thomas*, 615 S.W.3d at 568–69. Nevertheless, Martinez argues that the statutory admonishment concerning immigration consequences was constitutionally deficient because it was directed only at noncitizens.

We assume for the sake of argument that the trial court's admonishment did not adequately apprise Martinez of the risk of denaturalization. However, Martinez presents no argument addressing whether the trial court was required to make such an admonishment in the first place. Denaturalization, as with other immigration consequences, is a collateral consequence of Martinez's conviction. *See State v. Jimenez*, 987 S.W.2d 886, 888–89 (Tex. Crim. App. 1999) (holding that deportation is a collateral consequence and that admonishing defendants as to possible immigration consequences "is not constitutionally required"); *Ex parte Luna*, 401 S.W.3d 329, 334 (Tex. App.—Houston [14th Dist.] 2013, no pet.). *Padilla* does not change this calculus. The *Padilla* Court explicitly declined to resolve whether immigration consequences were collateral or direct, and it did not address any due process issues. 559 U.S. at 366; *see United States v. Carrillo–Estrada*, 564 Fed. Appx. 385, 387 (10th Cir. 2014) (declining to

19

extend *Padilla* to a due process claim); *United States v. Rodriguez–Penton*, 547 Fed.Appx. 738, 739–40 (6th Cir. 2013) (explaining that the Sixth Amendment imposes a higher burden on counsel to inform clients of the consequences of entering a guilty plea than the Due Process Clause of the Fifth Amendment imposes on courts); *United States v. Delgado–Ramos*, 635 F.3d 1237, 1240–41 (9th Cir. 2011) (per curiam) (explaining that *Padilla* "sheds no light on the obligations" the trial court has under the Fifth Amendment); *United States v. Youngs*, 687 F.3d 56, 62–63 (2d Cir. 2012) (recognizing that *Padilla* did not undermine distinction between direct and collateral consequences in Fifth Amendment cases); *United States v. Nicholson*, 676 F.3d 376, 381–82 & n.3 (4th Cir. 2012) (same); *People v. Guzman*, 43 N.E.3d 954, 960 (Ill. 2015) (same); *State v. Ortiz*, 44 A.3d 425, 429–31 (N.H. 2012) (same); *Stiger v. Commonwealth*, 381 S.W.3d 230, 235 (Ky. 2012) (same); *Smith v. State*, 697 S.E.2d 177, 183–84 (Ga. 2010) (same).

Because denaturalization is a collateral consequence of Martinez's guilty plea, we conclude that any failure by the trial court to admonish Martinez in this regard did not render his plea unknowing, unintelligent, or involuntary. *See Stubbs*, 533 S.W.3d at 567. Accordingly, the habeas court did not err in rejecting Martinez's due process claim. *See Ex parte Estrada*, 573 S.W.3d at 890. We overrule his second issue.

## V. CONCLUSION

We affirm the habeas court's judgment.

L. ARON PEÑA JR.
Justice

20

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
27th day of July, 2023.